1  WONDIE RUSSELL (Bar No. 77990)
   CATHERINE P. ROSEN (Bar No. 62562)
2  HELLER EHRMAN LLP
3  333 Bush Street
   San Francisco, CA 94104
4  Telephone: +1.415.772.6000
   Facsimile: +1.415.772.6268
5  Wondie.Russell@hellerehrman.com

6  ARLENE MAYERSON (Bar No. 79310)
7  LARISA M. CUMMINGS (Bar No. 131076)
   SILVIA YEE (Bar No. 222737)
8  DISABILITY RIGHTS EDUCATION AND DEFENSE FUND
   2212 Sixth Street
9  Berkeley, CA 94710
   Telephone: +1.510.644.2255
10 Facsimile: +1.510.841.8645
11 lcummings@dredf.org

12 *See Signature Page for List of Additional Counsel*

   Attorneys for Plaintiffs
13

                    UNITED STATES DISTRICT COURT
14
                   NORTHERN DISTRICT OF CALIFORNIA
15
                      SAN FRANCISCO DIVISION
16

17 AMERICAN COUNCIL OF THE BLIND, a         Case No.
   District of Columbia non-profit corporation,
18 TAMMY RENEE COOPER, SCARLETT MILES,
   MARVELENA QUESADA, ARLENE DOHERTY,       **COMPLAINT FOR DECLARATORY**
19 ALICE MARJORIE DONOVAN, BILLIE JEAN       **AND INJUNCTIVE RELIEF**
   KEITH, and GEORGE P. SMITH on behalf of
20 themselves and all others similarly situated,   **(CLASS ACTION)**

21                              Plaintiffs,

22       v.

23
   JO ANNE B. BARNHART, Commissioner of the
24 Social Security Administration, in her official
   capacity, and SOCIAL SECURITY
25 ADMINISTRATION

26                              Defendants.

27

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

1.     Over one hundred thousand blind and visually impaired Americans rely on benefits from the Social Security Administration ("SSA") to meet their basic needs.  They are among the 48 million Americans who receive benefits from the Old Age, Survivors and Disability Insurance ("OASDI") program based on an earnings history, and the seven million Americans who receive Supplemental Security Income ("SSI") based on financial need and either age, blindness, or other disabilities.  Despite the obvious and critical importance of these benefits, SSA regularly communicates with blind and visually impaired persons in standard print format, which they cannot read.  SSA regularly suspends the benefits of blind and visually impaired recipients for failing to comply with requirements set forth in standard print documents that they cannot read and for failing to return printed forms that they cannot complete.  As a result, many have suffered extreme financial and personal hardship.

2.     Section 504 of the Rehabilitation Act of 1973 and federal regulations require SSA to communicate effectively with its applicants, beneficiaries, and recipients.  SSA must reasonably accommodate blind and visually impaired persons to ensure that they have an equal opportunity to participate in and enjoy the benefits of SSA programs. Such reasonable accommodations for persons with impaired vision would ordinarily include readers, Brailled materials, audio recordings, electronic mail, large print format and computer disks. (As an example of a document in an accessible format for blind and visually impaired individuals who read Braille, attached as Exhibit 1 is a Braille version of this complaint.)  Over three decades after the enactment of the Rehabilitation Act, however, SSA refuses to communicate with blind and visually impaired persons in these or any other accessible formats.  Such conduct bars blind and visually impaired persons from participating equally in SSA programs and deprives them of critical benefits without meaningful notice in violation of Section 504 of the Rehabilitation Act and the Due Process Clause of the Fifth Amendment to the United States Constitution.

1

1

**JURISDICTION AND VENUE**

2

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1361.

3

Plaintiffs seek a declaration of rights pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201,

4

2202.

5

4.      Plaintiffs Marvelena Quesada, Arlene Doherty, Alice Marjorie Donovan, and

6

George P. Smith reside within this District.  Venue is proper pursuant to 28 U.S.C. § 1391(b) in the

7

Northern District of California because a substantial part of the events giving rise to Plaintiffs'

8

claims occurred in this District and because Defendants maintain several offices and operate in this

9

District.

10

**PARTIES**

11

5.      Plaintiff American Council of the Blind ("ACB") is a national membership

12

organization of blind and visually impaired persons organized as a non-profit corporation under the

13

laws of the District of Columbia.  ACB brings this action on behalf of its blind and visually

14

impaired members who are suffering deprivations of their rights and protected interests as a result

15

of Defendants' conduct and policies.  ACB has approximately eighteen thousand members

16

nationwide, many of whom are blind or visually impaired.

17

6.      Plaintiff Tammy Renee Cooper is a blind, 35 year old recipient of SSI and

18

beneficiary of Social Security Disability Insurance ("SSDI"), which is part of the OASDI program,

19

based on blindness.  She resides in Los Angeles, California.

20

7.      Plaintiff Scarlett Miles is a visually impaired, 53 year old recipient of SSI based on

21

blindness.  She resides in Eagle Point, Oregon.

22

8.      Plaintiff Marvelena Quesada is a blind, 31 year old recipient of SSI and beneficiary

23

of SSDI based on blindness.  She resides in San Francisco, California.

24

9.      Plaintiff Arlene Doherty is a blind, 70 year old beneficiary of Social Security

25

retirement insurance benefits, which are part of the OASDI program, based on age and a prior

26

recipient of SSI based on blindness.  She resides in San Francisco, California.

27

28

2

10.     Plaintiff Alice Marjorie Donovan is a blind, 43 year old recipient of SSI based on blindness.  She resides in Burlingame, California.

11.     Plaintiff Billie Jean Keith is a visually impaired, 66 year old beneficiary of Social Security retirement insurance benefits based on age and a prior recipient of SSI based on blindness. She resides in Arlington, Virginia.

12.     Plaintiff George P. Smith is a blind, 62 year old recipient of SSI and a beneficiary of SSDI benefits based on blindness residing in Oakland, California.

13.     Defendant Jo Anne B. Barnhart is the Commissioner of SSA.  As such, she is charged by federal law with administering and supervising all benefits programs administered by SSA nationwide, including SSI, OASDI, and Special Veterans Benefits under Title VIII of the Social Security Act.  She is also responsible for taking new Medicare applications and for determining eligibility for the low income subsidy under the Medicare Part D prescription drug benefit.  She is sued in her capacity as the official charged with performing the statutory and regulatory duties of SSA and with supervisory responsibility over SSA and its divisions, agents, employees and representatives.

14.     Defendant Social Security Administration administers and supervises all SSA benefits programs nationwide, including SSI, OASDI, and Special Veterans Benefits under Title VIII of the Social Security Act, as well as taking new Medicare applications and for determining eligibility for the low income subsidy under the Medicare Part D prescription drug benefit.

15.     All divisions, agents, employees and representatives of Defendants were acting within the scope of their agency or employment while making any of the statements and committing any of the acts alleged herein.  Defendants and any of their respective divisions, agents, employees and representatives each acted as the agent or representative of each other in committing any of the acts or making any of the statements alleged herein.

## CLASS ACTION ALLEGATIONS

16.     Plaintiffs ACB, Tammy Renee Cooper, Scarlett Miles, Marvelena Quesada, Arlene Doherty, Alice Marjorie Donovan, Billie Jean Keith and George P. Smith ("Plaintiffs") bring this complaint on behalf of themselves and as representatives of a class of similarly situated persons.

3

The class consists of all current and future applicants, beneficiaries, recipients, and representative payees of SSA programs who have visual impairments that substantially limit the major life activity of seeing and require accessible formats to ensure access to the information that SSA provides to applicants, beneficiaries, and recipients of its programs.

17.     Plaintiffs are informed and believe and on that basis allege that the class consists of well over one hundred thousand persons and is so numerous that joinder of all class members is impracticable.

18.     There are questions of law and fact common to all class members that predominate over questions only affecting individual class members, including, among others: (a) whether Defendants' refusal to offer or provide class members with communications in accessible formats bars their equal participation in SSA benefits programs in violation of Section 504 of the Rehabilitation Act of 1973; and (b) whether Defendants' policy of reducing or terminating the class members' SSA benefits solely upon standard print notices violates the Due Process Clause of the Fifth Amendment to the Constitution.

19.     Plaintiffs' claims are typical of the claims of all class members, they arise from the same course of conduct by Defendants, and the relief sought is common to all class members.  In addition, Defendants have acted and continue to act on grounds generally applicable to all class members, thereby making relief appropriate to the class as a whole.

20.     Plaintiffs will fairly and adequately protect the interests of the class members.

### STATEMENT OF FACTS

21.     In providing benefits to millions of indigent and disabled Americans, SSA regularly communicates complex information to applicants, beneficiaries, and recipients of its programs. SSA regularly sends blind persons standard print notices about their individual benefits.  These notices regularly include calculations of awards, suspensions and terminations of their benefits, printed forms to complete, appointments to meet with SSA representatives, requests for re-certification of their eligibility, and deadlines for responding to SSA requests.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

22.     SSA only provides such individual notices in standard print format.  Despite repeated requests and complaints, SSA refuses to provide individual notices in formats that are accessible to blind persons, such as Braille, large print, electronic mail and audiotape recording.

23.     Standard printed notices about individual benefits are difficult to comprehend, analyze, and recall based on a single reading.  (*See*, for example, Exhibits 2 and 3.)  They are even more difficult to comprehend based on hearing the information read aloud a single time.  Such notices often establish requirements and rapid deadlines that blind persons cannot meet unless they are provided in accessible format.  Such notices typically state that SSA will suspend benefits if the beneficiary or recipient does not respond within a short time frame.  (*See*, for example, Exhibit 4.)  In particular, written notice of suspension of SSI benefits requires recipients and beneficiaries to file an appeal within ten days in order for their SSI benefits to continue pending determination on appeal.  Other written notices require blind persons to provide financial and medical records, which blind persons cannot gather quickly or without sighted assistance, which can be quite expensive.  Because blind persons often cannot comply with these requirements and deadlines without having the requests in an accessible format, their SSA benefits are suspended or terminated for failure to comply.  This conduct on the part of SSA deprives blind persons of equal access to essential information they need to maintain their benefits.

24.     SSA also provides more general information in its benefits publications to applicants, beneficiaries, and recipients about its programs, including: discussions of applicable rules, procedures, and conditions on eligibility for benefits; procedures and rights pertaining to appealing adverse determinations; and the duties imposed upon beneficiaries and recipients.

25.     While SSA provides a select list of publications about its programs in accessible formats, SSA has not adequately publicized the availability of such information or trained its staff in field offices or at the SSA 800 toll-free telephone number to ensure that blind persons are informed of its availability.  Indeed, many blind persons who request such information are told that it does not exist.  Callers who do receive program information must know to ask for precise publication titles or get additional SSA contact numbers — information that is not readily

5

obtainable from SSA. This conduct deprives blind persons of equal access to essential program information they need to maintain their benefits.

26.     In 2002, SSA advised in Program Operations Manual System ("POMS"), an operations manual designed to instruct SSA personnel on agency policy, that it would record the preference of blind beneficiaries to receive benefits information in Braille, but that it could not actually provide such information in Braille at that time. In POMS DI 11005.070 B. 2. e., SSA advised that blind beneficiaries could request (but not receive) benefits information to be provided in Braille. But this provision was eliminated earlier this year. The latest POMS DI 11005.070 B. 2. e. reads: "Braille notices are no longer available." Because it does not provide Braille, SSA recently advised in EM-050209, an internal SSA "policy instruction," that beneficiaries who elect to receive written notices in Braille should nevertheless be provided standard written notice by U.S. mail.

27.     The POMS list two "options" for blind persons who request benefits information in an accessible format: a "supplemental telephone call within five working days after the initial notice is mailed"; or a standard print notice sent by certified U.S. mail. A person who requests supplemental telephone calls will only get some notices read over the telephone. According to POMS NL 00603.030, SSA does not offer to read all notices sent, only "vital" notices pertaining to "decisions, determinations or proposed actions" that affect benefits. SSA policy does not require other communications to be read over the telephone, such as notices of appointments with SSA, requests for documents, notices pertaining to consultative examinations and other actions necessary for re-determination of eligibility. Neither option provides effective communication to blind persons.

28.     A telephone call to read only certain notices sent cannot fully or effectively communicate the complex information SSA routinely provides its beneficiaries and recipients. A single telephone call is inferior to reading information for oneself. The standard print notices contain complex calculations and rules that Plaintiffs must review privately, repeatedly, and at their own pace. Sometimes the notices also contain information of a personal nature. In addition, SSA consistently fails to inform blind persons of the supplemental telephone call option, fails to clarify

6

1  that this option is limited to certain kinds of notices, and fails to provide a supplemental telephone

2  call even to the blind persons who actually request one.

3       29.     A standard print notice sent by certified mail does not provide effective

4  communication. Blind persons cannot read standard written documents, regardless of how they

5  arrive in the mail. Certified U.S. mail places a greater burden on blind persons than regular U.S.

6  mail because blind persons will be forced to travel to the post office to sign for a certified letter if

7  they miss delivery, and travel is typically difficult and exhausting for blind persons.

8       30.     SSA has a policy of suspending blind persons' benefits without providing a

9  supplemental telephone call. In POMS NL 00603.040, SSA directs its representatives: "Do not

10  cancel a proposed action *solely because the advance notice was not read* to the

11  claimant/beneficiary. If you are unable to reach the individual to read a due process notice that was

12  mailed, *complete the proposed action as usual*." (Emphasis added.) Although it is obvious that

13  blind persons cannot read standard written documents, the POMS states that "the due process

14  requirement is met because a notice of proposed action was mailed to the claimant." In POMS NL

15  00603.050, SSA directs its representatives to make only three attempts by telephone, in a span of

16  only seven days following the date of the standard written notice, and further, "if the notice refers to

17  a pamphlet, read only the notice over the telephone. If assistance is required with the pamphlet,

18  advise the beneficiary to recontact the [field office] about the pamphlet."

19  **TAMMY RENEE COOPER**

20       31.     Ms. Cooper receives SSI and SSDI on the basis of blindness and financial need. In

21  1988, Ms. Cooper began receiving benefits from SSA on the basis of blindness. She has been

22  totally blind since 1988. With few exceptions, SSA has communicated with Ms. Cooper in

23  standard print format, which she cannot read. SSA has not informed Ms. Cooper of her right to a

24  reasonable accommodation of her disability or inquired about her preference for an accessible

25  format for written communications.

26       32.     Ms. Cooper has repeatedly requested SSA to accommodate her disability by

27  providing audio tape recordings of the contents of written information sent to her. SSA denied her

28  requests for audio tape recordings of written communications. As a result, Ms. Cooper has failed to

7

1   meet deadlines and other requirements established in written communications from SSA because

2   she cannot read them.

3       33.    In 2000, an SSA representative called Ms. Cooper by telephone and offered to read a

4   written communication from SSA. In 2001, she received another such telephone call from an SSA

5   representative. Ms. Cooper relied on telephone calls from SSA representatives to notify her of any

6   communications from SSA and to read the contents of such communications to her.

7       34.    Ms. Cooper did not receive another such telephone call. She reasonably assumed

8   that SSA had not sent any further written communications to her because she was told that she

9   would receive a telephone call from an SSA representative if any such communications were sent.

10      35.    In September of 2003, SSA suspended her SSI and SSDI benefits. Ms. Cooper only

11  discovered that SSA had suspended her benefits when her bank account balance was lower than

12  expected. Immediately after she realized her benefits were suspended, Ms. Cooper contacted SSA

13  and was told by an SSA representative that SSA suspended her benefits because she had received

14  more in benefits than she was entitled to receive. An SSA representative stated that SSA mailed

15  her a written notice of the suspension and that her benefits were suspended when she failed to

16  respond.

17      36.    Ms. Cooper informed the SSA representative that she did not receive any such

18  communication and that she could not read written communications because she was blind. She

19  repeated her request to receive communications from SSA by audio tape recording. Her request

20  was refused.

21      37.    Subsequently Ms. Cooper's attorney obtained a copy of the suspension notice from

22  SSA. The notice, dated August 5, 2003, stated, "We are stopping the checks because we need

23  correct information about your name, address or bank account." (Exhibit 5.) It made no mention of

24  her having received more benefits than she was entitled to receive. The notice also stated that if she

25  appealed within ten days she could keep getting the same check. Had she been able to read the

26  notice she would have promptly appealed and her benefits would have continued uninterrupted.

27      38.    Instead, Ms. Cooper suffered severe financial hardship for the ensuing two months.

28  Without SSI and SSDI benefits, Ms. Cooper could not buy basic necessities, including groceries or

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

hygiene products.  As a result, Ms. Cooper was forced to borrow money from others to meet her basic needs and those of her young son.

39.     Ms. Cooper later did receive a Notice of Overpayment dated September 30, 2003 indicating that she had in fact been paid more than she was entitled to receive and that the amount of the overpayment would be subtracted from future SSI grants.   The notice, in addition to providing information on how to appeal, also contained information on how to seek a waiver of recovery of the overpayment if she agreed there was an overpayment but contended she was not at fault in creating the overpayment.  (Exhibit 6.)  Ms. Cooper was not able to read the notice since it was in standard print format.  However, at that point she had an attorney who was successful in obtaining a waiver of recovery of the overpayment.

40.     In February of 2004, pursuant to 45 C.F.R. § 85.61, Ms. Cooper filed a complaint with the SSA Office of the General Counsel on behalf of herself and all other similarly situated persons. Her complaint alleged that SSA had discriminated against her and all similarly situated persons in violation of Section 504 of the Rehabilitation Act of 1973. Her complaint requested, among other things, an order requiring SSA to communicate effectively with her and all similarly situated persons in a format that is accessible to blind persons and visually impaired persons, including audio tape recordings.

41.     On June 4, 2004, SSA Region X Office of the General Counsel sent a letter to Ms. Cooper stating that SSA had not discriminated against Ms. Cooper and denying her request for audio tape recordings of standard print communications.

42.     On July 12, 2004, through her attorney, Ms. Cooper filed a timely request for reconsideration to the SSA Office of the General Counsel.  SSA failed to respond to Ms. Cooper's appeal and failed to notify Ms. Cooper of the results of her appeal within 60 days.

43.     Ms. Cooper has exhausted her administrative remedies on behalf of herself and all similarly situated persons pursuant to the procedures outlined by governing Section 504 regulations. Ms. Cooper's administrative complaint was brought expressly on behalf of herself and all similarly situated blind persons who do not receive effective communication from SSA in an accessible format. Ms. Cooper's administrative complaint also provided Defendants an opportunity to cure

1   the violation, as to her and all similarly situated persons.  Defendants rejected Ms. Cooper's

2   administrative complaint and failed to respond to her request for reconsideration.  Defendants'

3   conduct with respect to Ms. Cooper's complaint demonstrates that the administrative complaint

4   process is futile and will not provide relief to Ms. Cooper and all similarly situated persons.

5          44.    Most recently, in September 2005 Ms. Cooper received a notice from SSA,

6   explaining the change in her benefits associated with her move from Oregon to California, in

7   standard print format and, for the first time, on audio cassette tape as well.  SSA has not provided

8   any assurances to Ms. Cooper that it will continue to provide notices in an accessible format.  She

9   later received other notices from SSA only in standard print format.

10         45.    SSA continues to deny Ms. Cooper an equal opportunity to participate in its

11  programs by communicating with her only in standard print format, except for just one September

12  2005 notice.

13  **SCARLETT MILES**

14         46.    Ms. Miles receives SSI on the basis of blindness and financial need.  She began

15  receiving benefits when she was a teenager.  Ms. Miles has been visually impaired from a young

16  age and is now blind.  With few exceptions, SSA has communicated with Ms. Miles only in

17  standard print format, which she cannot read.  SSA has not informed Ms. Miles of her right to

18  reasonable accommodation or inquired about her preference for an accessible format for written

19  communications.

20         47.    Ms. Miles has repeatedly requested SSA to accommodate her disability by providing

21  her audio tape recordings of written communications or the contents of such communications by

22  electronic mail, which a computer software program can read aloud to her repeatedly and as often

23  as needed.  Ms. Miles has repeatedly requested SSA representatives contact her by telephone when

24  SSA mails a written communication.  SSA refused her requests for communications in an

25  accessible format.  As a result, Ms. Miles has failed to comply with deadlines and other

26  requirements established in written communications from SSA because she cannot read them.

27         48.    In mid-2004, Ms. Miles received a written form from SSA that she could not read or

28  complete.  She returned the form to SSA and wrote on it that she was blind and needed to receive

10

1  communications in an accessible format.  Several months later, SSA sent her the same written form.

2  She returned it and again wrote that she was blind and needed to receive communications in an

3  accessible format.  Several months later, in early 2005, SSA sent her the same written form a third

4  time.  Ms. Miles called the SSA 800 telephone number for assistance.  An SSA representative

5  scheduled a telephone appointment for her local SSA office to assist her in completing the written

6  form.

7       49.      Shortly thereafter, an SSA representative from a local SSA office left a voice

8  message for Ms. Miles in response to her request for assistance.  The SSA representative stated:

> "I'm a little confused why you wouldn't have a family or friend help
> you complete the questionnaire . . . Having a phone appointment for
> something if you needed assistance seems kind of silly because you
> can get a friend or relative to help you or a neighbor.  If you wanted
> to come in and have us complete this, you know that would be your
> choice, but I don't see any need for you to have this appointment at
> all."

14      50.      Ms. Miles telephoned the SSA representative and stated that she did not have any

15  family or friends.  Ms. Miles told the SSA representative that she could not read the form.  The

16  SSA representative stated that SSA did not have staff to assist Ms. Miles to fill out the form and

17  suggested that "anyone" could fill out the form for Ms. Miles because it was so "simple."  Ms.

18  Miles responded that she did not want to disclose her Social Security number to others because she

19  does not have a trusted friend or family member on whom she can rely.  For the third time, Ms.

20  Miles returned the form and wrote on the document that she could not read it because she is blind.

21      51.      In mid-2005, Ms. Miles received the same written form in standard print format for

22  the fourth time.  The form stated it was a "FINAL REQUEST" and that Ms. Miles' SSI benefits

23  would be terminated if she did not complete and return the form within 10 days.  But Ms. Miles

24  could not read the form and therefore could not respond within the allotted time.  On this occasion

25  Ms. Miles was able to secure the assistance of an attorney who provided her with a copy of the SSA

26  notice in an accessible format.  Ms. Miles was then able to respond to SSA, albeit several weeks

27  late, and was assured by an SSA representative that her SSI benefits would continue.  As a result of

28  SSA not communicating with her in accessible format, Ms. Miles has suffered and continues to

11

1  suffer emotional distress for fear that her benefits will be suspended, which would be disastrous for

2  her since she depends entirely on SSI for her livelihood.

3      52.    SSA continues to deny Ms. Miles an equal opportunity to participate in its programs

4  by communicating with her only in standard print format.

5      **MARVELENA QUESADA**

6      53.    Ms. Quesada receives SSI on the basis of blindness and financial need and SSDI on

7  the basis of blindness. On or about 1992 Ms. Quesada began receiving SSI benefits from SSA, and

8  on or about 2004 Ms. Quesada began receiving SSDI benefits from SSA, on the basis of blindness.

9  Ms. Quesada has been blind from birth. With few exceptions, SSA has communicated with Ms.

10  Quesada solely in standard print format, which she cannot read. SSA has not informed Ms. Quesada

11  of her right to reasonable accommodation or inquired about her preference for an accessible format

12  for written communications.

13      54.    Ms. Quesada has repeatedly requested SSA by telephone to accommodate her

14  disability by providing written communications in Braille, by electronic mail or computer diskette.

15  SSA refused her requests for communications in an accessible format. Ms. Quesada has also

16  requested information in accessible format about the rules and procedures governing SSA benefits

17  programs, including SSI. Because she did not receive information about her individual benefits and

18  rules governing SSA benefits programs in accessible format, Ms. Quesada has been unable to

19  comply with program requirements.

20      55.    In 2003, SSA suspended Ms. Quesada's SSI benefits. In 2003, Ms. Quesada

21  received a written communication from SSA that she could not read. The document established an

22  appointment at an SSA office that Ms. Quesada was required to attend and described documents

23  that she was required to provide. Because she could not read the document, Ms. Quesada did not

24  provide the requested documents or attend the appointment. Ms. Quesada called an SSA claims

25  representative and requested that all further communications be provided to her in Braille because

26  she is blind and cannot read documents written in standard print format. Her request was refused.

27  An SSA representative stated that SSA does not and cannot provide Braille.

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

56. Ms. Quesada suffered severe financial hardship for several months. Without SSI benefits, Ms. Quesada could not buy basic necessities, including groceries. Ms. Quesada borrowed money and purchased necessities on credit. She accumulated a significant amount of debt that was difficult to repay. She made arrangements through a credit counseling service to resolve her outstanding debt problems.

57. SSA continues to deny Ms. Quesada an equal opportunity to participate in its programs by communicating with her only in standard print format.

**ARLENE DOHERTY**

58. Ms. Doherty receives Social Security retirement insurance benefits on the basis of age. On or about 1970, Ms. Doherty began receiving benefits on the basis of blindness from a state benefits program that was replaced by SSI in 1974. She received SSI on the basis of blindness and later began to receive Social Security retirement insurance benefits on the basis of age when she turned 65. With few exceptions, SSA has communicated with Ms. Doherty solely in standard print format, which she cannot read. SSA has not informed Ms. Doherty of her right to reasonable accommodation or inquired about her preference for an accessible format for written communications.

59. Ms. Doherty has repeatedly requested SSA to accommodate her disability by telephoning her to read written communications aloud to her. SSA refused her requests for communications in accessible format. SSA failed to accommodate Ms. Doherty and continued to send her communications in standard print format only. As a result, Ms. Doherty has failed to meet deadlines and other requirements established in written communications from SSA because she cannot read them.

60. On occasion, one time per year for several years during the late 1990's, SSA representatives contacted Ms. Doherty by telephone and read the contents of written communications from SSA to her. Ms. Doherty has not received any further telephone calls from an SSA representative.

61. Ms. Doherty has relied on sighted persons to read written communications from SSA to her. Ms. Doherty must travel approximately an hour to meet a sighted reader once a week and

1  bring her mail for the week along with her. Because she is blind, Ms. Doherty sometimes
2  misplaces or leaves important mail behind, the contents of which are not read aloud to her. On
3  occasion, the sighted reader on whom she relies, who is 84 years old, has missed their
4  appointments. In that circumstance, Ms. Doherty must wait two weeks or more before she hears the
5  contents of any written communications.

6      62.    In 2003, Ms. Doherty received a series of standard print notices from SSA that she
7  could not read. The written notices stated that her SSI benefits were suspended because she had
8  excess resources. The written notices also stated that she was required to repay the SSI benefits she
9  received while she had excess resources. Because she could not read the written notices from SSA,
10 she did not comprehend them. She erroneously believed that she was obligated to repay SSA
11 beginning in 2004 and ending in 2020 and that she was ineligible to receive SSI benefits until after
12 she had fully repaid SSA in 2020. In fact, she was immediately eligible to receive SSI again
13 because she no longer had excess resources. Ms. Doherty could not understand the content of the
14 written notices because she could not read them and was forced to rely on a sighted reader.

15     63.    As a result, Ms. Doherty has not received SSI for over a year and was rendered
16 destitute. Unable to survive on $371 a month in Social Security benefits, she borrowed money
17 from her family members to make ends meet. Eventually, Ms. Doherty decided out of desperation
18 to take out a "reverse mortgage" on her home, thereby depleting the equity she had worked so hard
19 to build up over the years.

20     64.    SSA continues to deny Ms. Doherty an equal opportunity to participate in its
21 programs by communicating with her only in standard print format.

22     **ALICE MARJORIE DONOVAN**

23     65.    Ms. Donovan receives SSI benefits on the basis of blindness and financial need.
24 When she was a child, she began receiving benefits on the basis of disability from a state benefits
25 program that was replaced by SSA in 1974. Ms. Donovan has been blind from birth. With few
26 exceptions, SSA has communicated with Ms. Donovan only in standard print format, which she
27 cannot read. SSA has not informed Ms. Donovan of her right to reasonable accommodation or
28 inquired about her preference for an accessible format for written communications.

14

66. Ms. Donovan has repeatedly requested SSA to accommodate her disability by providing written notices in Braille, by electronic mail, or on a computer diskette. SSA refused her repeated requests for communications in accessible format. As a result, Ms. Donovan has failed to meet deadlines and other requirements established in written communications from SSA and adverse actions have been taken by SSA to suspend her SSI benefits.

67. In May and June 2003, SSA sent Ms. Donovan standard print notices informing her that SSI payments would be changed because she had excess resources. In June 2003 Ms. Donovan requested reconsideration, asking that her SSI payments be reinstated, explaining the bases for the apparently excessive balance in her bank account, and reiterating her request that SSA communicate with her in accessible format.

68. In 2004, on two occasions, an SSA representative telephoned Ms. Donovan and offered to read the contents of a standard print communication that SSA had sent to her by mail. Ms. Donovan came to rely on telephone calls from SSA to inform her of communications about her benefits, but SSA still sent written communications in standard print format without also providing her a telephone call. Accordingly, Ms. Donovan is forced to rely on a sighted reader to ensure that she does not miss written communications from SSA about her benefits.

69. In September of 2004, Ms. Donovan received a standard print notice that SSA proposed to suspend her SSI benefits effective October 1, 2004 because she had excess resources. A sighted reader, available to Ms. Donovan on an irregular basis, read her the contents of the letter. But Ms. Donovan could not understand why SSA was suspending her SSI benefits because she could not read the letter for herself. Ms. Donovan also did not have access to information about the rules and requirements governing SSI benefits. Ms. Donovan could not recall specific details contained in the notice because she did not have an accessible copy to which she could refer.

70. In September of 2004, a sighted reader wrote a letter to SSA on Ms. Donovan's behalf requesting reconsideration and that her SSI benefits continue until her request was resolved. On September 22, 2004, a sighted reader wrote another letter to SSA on her behalf requesting "Braille materials and Braille copies of regulations" and "copies of SSA regulations which may clarify what a resource is, how much an individual can have in resources, and regulations regarding

Blindness Related Work Expenses and what can be counted against work income." SSA has not responded to her request for accessible program information and materials. In addition, because SSA refused to communicate with her in an accessible format, Ms. Donovan requested that SSA provide her information about how to file an administrative discrimination complaint with SSA. SSA also failed to respond to that request, and, as a result, Ms. Donovan has been unable to file an administrative complaint.

71.    SSA sent more standard print letters to Ms. Donovan in September, October and November of 2004, demanding repayment of thousands of dollars in SSI benefits. On September 27, 2004, SSA sent Ms. Donovan a letter stating that her SSI benefits would be suspended effective November 2004. In November of 2004, checks written against Ms. Donovan's account were returned for insufficient funds. Ms. Donovan contacted her bank to inquire as to why her account had insufficient funds and learned that SSA had terminated her SSI benefits, in spite of her requests for reconsideration and continuation of her benefits until her request was resolved. She telephoned a local SSA office, and an SSA representative informed her that her SSI benefits had been suspended in October of 2004.

72.    Ms. Donovan suffered financial hardship for two months. Without SSI benefits, Ms. Donovan had difficulty meeting her expenses. In December of 2004, Ms. Donovan contacted an SSA representative who finally arranged to restore her SSI benefits until resolution of her request for reconsideration, including the months during which her benefits were suspended.

73.    In June 2005, SSA sent a standard print letter reducing Ms. Donovan's SSI benefits again, effective July 1, 2005. On several occasions, Ms. Donovan called SSA to request an explanation because she could not read the notice or understand it merely by having it read aloud. She also wrote to SSA, with the help of a sighted reader, asking that no amounts be withheld from her SSI payments while she prepared her response and requesting documents in accessible format, such as Braille, to accommodate her blindness. To date, she has not received a response.

74.    Most recently, an SSA representative telephoned Ms. Donovan on September 13, 2005 to read her a letter, dated that same day, in response to her reconsideration request filed June 18, 2003 — more than two years earlier. As she requested during the September 13, 2005

16

telephone call, SSA sent Ms. Donovan an electronic copy of that letter by e-mail on September 14, 2005. Noting that reconsideration had been filed on June 18, 2003, the letter stated that based on information Ms. Donovan provided on November 29, 2004 SSA had determined that the total amount of overpayment of SSI had been recalculated and decreased. Ms. Donovan responded electronically by e-mail dated October 15, 2005 again requesting reconsideration or appeal for all alleged overpayments of SSI benefits to her. She also acknowledged that for the first time, after about seven years of requests, SSA had communicated with her via e-mail, a format that is accessible to her as a blind person.

75.    SSA continues to deny Ms. Donovan an equal opportunity to participate in its programs by communicating with her until October 14, 2005 only in standard print format, which she cannot read. Even now that she has received e-mail communications from SSA, based on her years of dealing with SSA she cannot feel certain that SSA will consistently communicate with her in a format that is accessible to her. SSA has not provided Ms. Donovan any assurances that it will continue to provide notices to her in an accessible format.

**BILLIE JEAN KEITH**

76.    Ms. Keith receives Social Security retirement insurance benefits on the basis of age. Ms. Keith has been visually impaired since the age of nine, but assisted by an adaptive technology that enlarges print, she can slowly read a limited amount of enlarged print. In 1982, Ms. Keith began receiving SSDI on the basis of blindness. SSA has communicated with Ms. Keith solely in standard print format, which she cannot read. SSA has not informed Ms. Keith of her right to reasonable accommodation or inquired about her preference for an accessible format for standard print communications.

77.    Ms. Keith has repeatedly requested SSA to accommodate her disability by providing standard print communications in large print. SSA refused her request for communications in an accessible format that she can read.

78.    In 1994, pursuant to 45 C.F.R. § 85.61, Ms. Keith filed an administrative complaint against SSA with the Department of Health and Human Services. Her complaint alleged that SSA discriminated against her on the basis of her disability by refusing to provide her with written

17

communications in large print. In September of 1997, SSA sent a standard print communication to Ms. Keith stating that SSA had not discriminated against Ms. Keith by failing to provide written communications in large print. Ms. Keith could not read the "no discrimination" letter because it was not provided in large print. Ms. Keith is unable to rely on her husband to read standard print documents to her because he is also blind.

79. Beginning in 2000, SSA annually sends Ms. Keith a standard print letter stating the amount of Social Security retirement insurance benefits she will receive. Although Ms. Keith believed her benefit should have increased, she could not gather enough information to challenge the determination of her benefits because she was unable to read the standard print letter. In addition, the letter had perforated edges that must be torn carefully and according to instructions on the letter to avoid tearing the text. Because she is visually impaired, Ms. Keith could not properly open the letter and tore the text of the letter. As a result, even with her adapative technology that enlarges standard print text, she could not read the letter and gather sufficient information to challenge SSA's determination.

80. SSA continues to deny Ms. Keith an equal opportunity to participate in its programs by communicating with her only in standard print format.

**GEORGE P. SMITH**

81. Mr. Smith receives SSI and SSDI on the basis of blindness. He first qualified for benefits under California's program of Aid to the Aged, Blind and Disabled (AABD) program when he was a child and was grandfathered in to SSI when the SSI program began in 1974. Ever since then, with few exceptions, SSA has communicated with Mr. Smith solely in standard print format, which he cannot read. SSA has not informed Mr. Smith of his right to reasonable accommodation or inquired about his preference for an accessible format for standard print communications.

82. Mr. Smith has repeatedly requested the SSA to provide him with SSI benefits publications in Braille. He does not use a computer and has no means of gaining access to the Internet or the SSA public website. Over the course of more than one year, Mr. Smith repeatedly telephoned the SSA 800 number to request publications about SSI benefits. Until very recently,

18

1  each time he was informed that no publications about SSI benefits were available in accessible

2  format. In addition, he attempted to use the automated prompt system on the SSA 800 number to

3  order publications in accessible format, but the system terminated the phone call instead of

4  permitting him to order the publications.

5      83.    Not until May of 2005 did a sighted person inform Mr. Smith about the SSA Braille

6  Services Team. He was then able to contact them directly to request SSI benefits publications in

7  Braille. On May 23, 2005, Mr. Smith finally received two volumes purporting to explain the SSI

8  program from the SSA Braille Services Team. He also received another volume listing other

9  publications the SSA provides in Braille.

10      84.    SSA failed to accommodate Mr. Smith by continuing to issue written

11  communications in standard print only, by refusing to inquire about his preference to receive

12  written communications in Braille, by refusing to inform him about the SSA's Braille Services

13  Team and otherwise failing to offer and provide him with SSA benefits publications in Braille.

14  While Mr. Smith has secured volunteer assistance from a sighted person to read notices to him, he

15  prefers independent access to communications from SSA and feels insecure about how long he will

16  continue to have reliable help, because it is only a voluntary service from a private organization.

17      85.    SSA has denied Mr. Smith an equal opportunity to participate in its programs by

18  communicating with him only in standard print format and by failing to respond to his request for

19  SSA benefits publications in Braille in a prompt and effective manner.

20      **AMERICAN COUNCIL OF THE BLIND**

21      86.    ACB is a national membership organization whose members are primarily blind and

22  visually impaired persons. ACB brings this action on behalf of its members. Its members include

23  thousands of current beneficiaries and recipients of SSI, SSDI, and Social Security retirement

24  insurance benefits. ACB's mission is to advocate for the implementation and enforcement of civil

25  rights protections for its blind and visually impaired members and all blind and visually impaired

26  persons; to elevate the social, economic and cultural level of blind persons; and to assist blind

27  persons develop their abilities and to assume a responsible place in the community. ACB publishes

28  a periodical publication in Braille, large print, audiotape, and computer disk; it holds conferences

19

and seminars for blind and visually impaired persons; it provides employment information and resources to blind and visually impaired persons; and it consults with public and private organizations on behalf of blind and visually impaired persons.  Defendant's unlawful conduct interferes with ACB's mission of elevating the status of blind persons and assisting them with developing and assuming a responsible place in the community and causes ACB to divert its resources to remedy injuries suffered by its members as a result of Defendant's unlawful conduct.

87.  With few exceptions, SSA has only communicated with blind and visually impaired members of ACB in standard print format.  SSA has not informed blind and visually impaired members of ACB of their right to reasonable accommodations of their disabilities.  Blind and visually members of ACB cannot comply with deadlines and requirements established in standard print notices from SSA, which they cannot read.  As a result, they have suffered reduction and termination of their benefits and related personal and financial hardships.

88.  Plaintiffs Marvelena Quesada, Billie Jean Keith, Alice Marjorie Donovan, and Arlene Doherty are members of ACB.

## FIRST CAUSE OF ACTION: VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973

89.  Paragraphs 1-88 are each re-alleged and incorporated herein as if fully set forth herein.

90.  Section 504 of the Rehabilitation Act of 1973 (as amended) ("Section 504") provides that:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or activity conducted by any Executive agency[.]"

29 U.S.C. § 794 (as amended).

91.  Each of the Plaintiffs and class members is an "individual with a disability" as defined in 29 U.S.C. § 705(20) because each has a visual impairment that substantially limits one or more of their major life activities, including the major life activity of seeing.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

92.     As a result of being "individual[s] with a disability" as defined in 29 U.S.C.
§ 705(20), each of the named Plaintiffs and class members is entitled to reasonable
accommodations in the form of auxiliary aids and services that provide them equal access to the
programs SSA administers.

93.     Defendants are bound by regulations of the United States Department of Health and
Human Services promulgated under Section 504 of the Rehabilitation Act, 45 C.F.R. § 85.1 *et seq.*

94.     These regulations require SSA to provide "auxiliary aids" to Plaintiffs, which are
"services or devices that enable persons with impaired sensory, manual, or speaking skills to have
an equal opportunity to participate in, and enjoy the benefits of, programs or activities" that SSA
conducts. As defined by the regulations themselves, auxiliary aids "useful for persons with
impaired vision include readers, Brailled materials, audio recordings, and other similar services and
devices." *Id*. The regulations also require SSA to "take appropriate steps to ensure effective
communication" and "furnish appropriate auxiliary aids where necessary to afford an individual
with handicaps an equal opportunity" to participate in its programs. *Id*. In addition, SSA must
"give primary consideration to the requests of the individual with handicaps" in determining the
type of auxiliary aid it must provide. 45 C.F.R. § 85.51(a)(1).

95.     As alleged herein, Defendants have and continue to discriminate unlawfully against
the named Plaintiffs and the class members by failing to communicate with Plaintiffs and the class
members in an accessible format. By refusing to communicate in a format that is accessible to
blind persons, Defendants has created and continues to create a significant and unnecessary
obstacle to Plaintiffs' and the class members' participation in SSA programs. Plaintiffs and the
class members cannot comprehend or use critical information from SSA in a manner equal to that
of sighted persons. Plaintiffs and the class members are forced to rely on the assistance of sighted
persons to communicate the contents of standard print communications to them. Such sighted
assistance is often unavailable, expensive, unreliable, inconsistent, untimely, or ineffective. In
particular, relying on sighted assistance also requires blind persons to submit to an invasion of
privacy; they must disclose highly sensitive information — including their Social Security numbers
and private financial information — to sighted persons simply to gain access to their own, private

21

Social Security benefits information. As a result, Plaintiffs who use sighted assistance are exposed to a needless risk of identity theft.

96.    Providing individual benefits and program information in formats accessible to Plaintiffs and the class members would not fundamentally alter SSA programs or create an undue administrative or cost burden. Numerous governmental agencies and large commercial entities already provide individual account and benefits information to blind and visually impaired persons in similar accessible formats.

97.    Defendants' conduct constitutes an ongoing and continuous violation of the law. Unless restrained from doing so, Defendants will continue to so violate the law. Defendants' conduct has caused and will continue to cause Plaintiffs immediate and irreparable injury. Plaintiffs have no adequate remedy at law for the injuries they suffer and will continue to suffer. Thus, Plaintiffs are entitled to injunctive relief.

WHEREFORE, Plaintiffs request relief as set forth below.

## SECOND CAUSE OF ACTION: VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION

98.    Paragraphs 1-97 are each re-alleged and incorporated as if fully set forth herein.

99.    The Due Process Clause of the Fifth Amendment prohibits Defendants from depriving Plaintiffs and the class members of a protected property interest without adequate notice and an opportunity to be heard. Plaintiffs and the class members have a protected property interest in receiving SSA benefits.

100.    Defendants have failed and continue to fail to provide Plaintiffs and the class members information in accessible formats about their individual benefits, SSA benefits publication materials, and the rules governing SSA benefits programs. As a result, Plaintiffs and the class members are denied adequate notice and an opportunity to be heard with respect to suspensions, terminations, and other actions affecting their SSA benefits. Defendants' conduct has deprived and continues to deprive Plaintiffs and the class members of SSA benefits to which they are entitled.

101.    As described above, Defendants have a policy of offering a telephone call to Plaintiffs to read the content of only certain kinds of standard print notices, such as of proposed

22

1    action with respect to Plaintiffs' and the class members benefits, and then taking adverse action

2    with respect to Plaintiffs' SSA benefits regardless of whether Plaintiffs and the class members

3    actually receive the telephone call.  This policy denies Plaintiffs and the class members notice and

4    an opportunity to be heard with respect to determinations and actions affecting their SSA benefits.

5    As a result, Defendants' conduct has deprived and continues to deprive Plaintiffs and the class

6    members of SSA benefits to which they are entitled, without due process of law.

7            WHEREFORE, Plaintiffs request relief as set forth below.

8    ### THIRD CAUSE OF ACTION:  DECLARATORY RELIEF

9            102.    Paragraphs 1-101 are each re-alleged and incorporated as if fully set forth herein.

10           103.    Defendants have and continue to fail to provide Plaintiffs and the class members

11   information in accessible formats about their individual benefits, SSA benefits publication

12   materials, and the rules governing SSA benefits programs in violation of the Rehabilitation Act of

13   1973, and continues to suspend or terminate the benefits of Plaintiffs and the class members

14   without meaningful notice in violation of the Due Process Clause of the Fifth Amendment to the

15   United States Constitution.

16           104.    A judicial declaration is necessary and appropriate in order that the parties know

17   their rights and duties and act accordingly.

18           WHEREFORE, Plaintiffs request relief as set forth below.

19   ### PRAYER FOR RELIEF

20           WHEREFORE, Plaintiffs respectfully pray that this Court:

21           1.      Certify at an appropriate time that this suit is properly maintainable as a class action

22   pursuant to Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure;

23           2.      Declare that Defendants' failure to offer SSA benefits information in accessible

24   formats to blind and visually impaired applicants, beneficiaries, recipients, and representative

25   payees of SSA benefits programs violates section 504 of the Rehabilitation Act of 1973 and the

26   Due Process Clause of the Fifth Amendment;

27           3.      Declare that Defendants have a duty to provide equal and meaningful access to all

28   SSA benefits information (including information about individual benefits and SSA publications

---

23

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   about its programs and rules) in formats that are accessible to blind and visually impaired persons,

2   including Braille, large print, electronic mail, computer disks, and audio tape recordings;

3        4.     Grant a permanent injunction, requiring Defendants, their successors in office,

4   agents, assigns, representatives, employees and all persons acting in concert therewith, including

5   state agencies responsible for disability determinations, to provide equal and meaningful access to

6   all SSA benefits information (including information about individual benefits and SSA publications

7   about its programs and rules) in appropriately secure formats that are accessible to blind and

8   visually impaired persons, including Braille, large print, electronic mail, computer disks, and audio

9   tape recordings;

10        5.     For costs of the suit herein;

11        6.     For reasonable attorneys' fees; and

12        7.     For such other and further relief as the Court deems just and proper.

13   November 16, 2005             Respectfully submitted,

14                          HELLER EHRMAN LLP

15                          DISABILITY RIGHTS EDUCATION AND DEFENSE

16                          FUND

17                          By *Wondie Russell*

18                          WONDIE RUSSELL
                       Attorneys For Plaintiffs

19   *Additional Co-Counsel for Plaintiffs*:
    GERALD A. MCINTYRE (Bar No. 181746)

20   JEANNE FINBERG (Bar No. 88333)
    NATIONAL SENIOR CITIZENS LAW CENTER

21   3435 Wilshire Boulevard, Suite 2860

22   Los Angeles, CA 90010
    Telephone: +1.213.639.0930

23   Facsimile: +1.213.639.0934
    gmcintyre@nsclc.org

24   KATHLEEN L. WILDE (Oregon Bar No. 97105) (*Pro Hac Vice* Application To Follow)

25   OREGON ADVOCACY CENTER
    620 SW Fifth Avenue, Fifth Floor

26   Portland, OR 97204
    Telephone: +1.503.243.2081

27   Facsimile: +1.503.243.1738

28   kwilde@oradvocacy.org

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

November 16, 2005                    HELLER EHRMAN LLP

DISABILITY RIGHTS EDUCATION AND DEFENSE
FUND

By _____
WONDIE RUSSELL
Attorneys For Plaintiffs

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

# PROOF OF SERVICE

I, Gary Padilla, declare that I am over the age of eighteen years and I am not a party to this action. My business address is 333 Bush Street, 30th Floor, San Francisco, California, 94104.

On November 16, 2005, I caused the documents listed below to be served on the interested parties in this action enclosed in a sealed envelope and/or by facsimile transmission, addressed as indicated below:

| | |
|---|---|
| JoAnne B. Barnhart<br>Social Security Administration<br>c/o General Counsel's Office<br>Room 611, Altmeyer Building<br>6401 Security Boulevard<br>Baltimore, MD 21235 | |

DOCUMENTS SERVED:

**CIVIL COVER SHEET**

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

[ ]   BY OVERNIGHT DELIVERY:  I caused such envelopes to be delivered to the above parties via FEDERAL EXPRESS PRIORITY OVERNIGHT delivery service.

[X]   BY PERSONAL SERVICE:  I caused the document(s) to be delivered by hand.

[ ]   BY MAIL:  I am readily familiar with the business practice for collection and processing correspondence for mailing with the United States Postal Service.  I know that the correspondence was deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business.  I know that the envelopes were sealed, and with postage thereon fully prepaid, placed for collection and mailing on this date, following ordinary business practices, in the United States mail at San Francisco, California.  I caused the document(s) to be sent by mail via United States Postal Service to the parties identified above.

[ ]   BY FACSIMILE:  By use of facsimile machine, I served a copy of the above listed document(s) on the above-listed interested parties in the within action by transmitting by facsimile machine to the following:  The facsimile machine I used complied with California Rules of Court, Rule 2003(3) and no error was reported by the machine.  Pursuant to California Rules of Court, Rule 2005, I caused the machine to print a transmission record of the transmission, a copy of which is attached to this declaration.

1      I declare under penalty of perjury under the laws of the United States of America that the

2  foregoing is true and correct; that this declaration is executed on November 16, 2005, at San
   Francisco, California.

3

4                                    Gary Padilla

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

Exhibit 1 is the Braille version of the complaint which is not attached hereto.

The Braille version of the complaint is on file with Court.

# EXHIBIT 1

# EXHIBIT 2

# Social Security Administration
# **Supplemental Security Income**
## Notice of Planned Action

Date:  September 15, 2004
Claim Number:

967

ALICE MAJORIE DONOVAN

*Type of Eligibility*
Individual—Blind

We are writing to tell you about changes in your Supplemental Security Income payments.  The following chart shows the SSI money due you for the months we changed.  As you can see from the chart, we are changing your payments for both past and future months.  The rest of this letter will tell you more about this change.

## **Your Payments Will Be Changed As Follows:**

| From | Through | Amount Due Each Month |
|------|---------|-----------------------|
| March 1, 2003 | May 31, 2003 | $0.00 |
| October 1, 2003 | October 31, 2003 | $0.00 |
| March 1, 2004 | May 31, 2004 | $0.00 |
| August 1, 2004 | Continuing | $0.00 |

We will stop your payments as shown above beginning October 2004.

## **Why Your Payments Changed**

- We find that you have resources worth more than $2,000.00 for March 2003 through May 2003, $2,000.00 for October 2003, $2,000.00 for March 2004 through May 2004 and $2,000.00 for August 2004 on.

  For you to continue to receive SSI payments, the resources that you own cannot be worth more than $2,000.00 for March 2003 through May 2003, $2,000.00 for October 2003, $2,000.00 for March 2004 through May 2004 and $2,000.00 for August 2004 on.  We call this amount the limit on resources.

See Next Page

SSA-L8155

**EXHIBIT 2**

09/15/2004

Resources are the things that you own such as cash, stocks, bank accounts, certain types of life insurance, buildings, and land on which you do not live.  We do not include as resources the home in which you live, one car used for necessary activities, and some other things.

• Although your resources would prevent you from receiving payments, you may still be able to receive SSI while you are trying to sell your resources if all of the following are true.

-- The value of cash, including savings, and other things you have that can easily be changed into cash is less than $1,692.00.

-- You have other things that cannot easily be changed into cash and these things make your resources too high.  Examples of such things are a building or land on which you do not live.

-- You will sign a written agreement which allows you to receive SSI payments while you are trying to sell the property that causes your resources to be over the limit.

-- You agree to repay any SSI payments which you receive while trying to sell the property.

If you think all of these are true about you, and you want to receive SSI payments, please contact the local Social Security office.

## Your SSI Is Based On These Facts

• You had monthly income of $6,347.04 for June 2004.  This amount does not affect your Supplemental Security Income payment.

• You had monthly income which must be considered in figuring your eligibility as follows:

Your wages of $9,067.20 for July 2004.

• In figuring your payment, your income to meet work expenses was disregarded as follows- $4,395.03 for July 2004.

## Information About Medicaid

For information about any change in your Medicaid eligibility caused by this action, you should get in touch with the county welfare department.

## You Can Review The Information in Your Case

The decisions in this letter are based on the law.  You have a right to review and get copies of the information in our records that we used to make the decisions explained in this letter.  You also have a right to review and copy the laws, regulations and policy statements used in deciding your case.  To do so, please contact us.  Our telephone number and address are shown under the heading "If You Have Any Questions."

SSA-L8155

09/15/2004

## Things To Remember

- We may be in touch with you later about any payments we previously made.

- This determination replaces all previous determinations for the above periods.

- If you think you may be eligible for SSI again, please contact us.  If you do not contact us before August 2005, you may have to file a new application.  If you have to file a new application, the earliest month for which we can pay you is the month after you file.

## If You Disagree With The Decision

If you disagree with the decision, you have the right to appeal.  We will review your case and consider any new facts you have.

- You have 60 days to ask for an appeal.

- The 60 days start the day after you get this letter.  We assume you got this letter 5 days after the date on it unless you show us that you did not get it within the 5-day period.

- You must have a good reason for waiting more than 60 days to ask for an appeal.

- To appeal, you must fill out a form called "Request for Reconsideration."  The form number is SSA-561.  To get this form, contact one of our offices.  We can help you fill out the form.

## Appeal In 10 Days To Keep Getting The Same Check

If you appeal within 10 days, you will continue to get the same check amount until we decide your case.

- The 10 days start the day after you get this letter.

- If you lose your appeal, you might have to pay back some or all of this money.

However, even if you appeal in 10 days, we may stop the check in October 2004 as shown on page 1 if both of the following are true:

- Our new decision is the same as the one appealed, and

- We send or give you a letter with our new decision in time to stop the check.

SSA-L8155

**How To Appeal**

There are three ways to appeal.  <u>You can pick the one you want.  If you meet with us in person, it may help us decide your case.</u>

- <u>Case Review.</u>  You have a right to review the facts in your file.  You can give us more facts to add to your file.  Then we'll decide your case again.  You won't meet with the person who decides your case.

- <u>Informal Conference.</u>  You'll meet with the person who decides your case.  You can tell that person why you think you're right.  You can give us more facts to help prove you're right.  You can bring other people to help explain your case.

- <u>Formal Conference.</u>  This is a meeting like an informal conference.  The difference is we can make people come to help prove you're right.  We can make them bring important papers about your case, even if they don't want to help you.  You can question these people at your meeting.

**If You Want Help With Your Appeal**

You can have a friend, lawyer or someone else help you.  <u>There are groups that can help you find a lawyer or give you free legal services if you qualify.</u>  There are also lawyers who do not charge unless you win your appeal.  Your local Social Security office has a list of groups that can help you with your appeal.

If you get someone to help you, you should let us know.  If you hire someone, we must approve the fee before he or she can collect it.

**If You Have Any Questions**

For general information about SSI, visit our website at www.socialsecurity.gov on the Internet.  There, you will also find the law and regulations about SSI eligibility and SSI payment amounts.

For general questions about SSI or specific questions about your case, you may call us toll-free at 1-800-772-1213, or call your local Social Security office at 650-579-4541.  Our lines are busiest early in the week and early in the month, so if your business can wait, it's best to call at other times.  We can answer most questions over the phone.  You can also write or visit any Social Security office.  The office that serves your area is located at:

SOCIAL SECURITY
SUITE 101
800 SOUTH CLAREMONT ST
SAN MATEO CA 94402

SSA-L8155

09/15/2004

If you do call or visit an office, please have this letter with you.  It will help
us answer your questions.  Also, if you plan to visit an office, you may call
ahead to make an appointment.  This will help us serve you more quickly
when you arrive at the office.

Linda S. McMahon
Deputy Commissioner
  for Operations

# EXHIBIT 3

# Social Security Administration
# Supplemental Security Income
Important Information

Date:  April 19, 2005
Claim Number:

A88

MARVELENA C QUESADA

*Type of Payment*
Individual--Blind

We are writing to tell you about changes in your Supplemental Security
Income record.   The rest of this letter will tell you more about this change.

## Information About Your Payments

- As we told you before, we are withholding part of your check to get
  back money you were overpaid.  Starting May 2005, we will start
  withholding $89.40.  Therefore, you will receive a check for $72.60 about
  the first day of the month starting in May 2005.

- The $89.40 we will withhold is 10 percent of your SSI money plus any
  other money we use in figuring your SSI.  If you want us to withhold
  more or less, please call or visit your Social Security office.

## You Can Review The Information in Your Case

The decisions in this letter are based on the law.  You have a right to review
and get copies of the information in our records that we used to make the
decisions explained in this letter.  You also have a right to review and copy
the laws, regulations and policy statements used in deciding your case.  To do
so, please contact us.  Our telephone number and address are shown under the
heading "If You Have Any Questions."

## Things To Remember

- This decision refers only to your claim for Supplemental Security
  Income payments.

- Would you like to work? If so, you should know about special
  Supplemental Security Income (SSI) rules.  These rules can help you
  keep Medicaid and may help you keep getting some SSI even though
  you are working.  The enclosed fact sheet tells you more about special
  SSI rules for people who work.

See Next Page

**EXHIBIT 3**

04/19/2005

## If You Disagree With The Decision

If you disagree with the decision, you have the right to appeal.  We will review your case and consider any new facts you have.

- You have 60 days to ask for an appeal.

- The 60 days start the day after you get this letter.  We assume you got this letter 5 days after the date on it unless you show us that you did not get it within the 5-day period.

- You must have a good reason for waiting more than 60 days to ask for an appeal.

- To appeal, you must fill out a form called "Request for Reconsideration."  The form number is SSA-561.  To get this form, contact one of our offices.  We can help you fill out the form.

## How To Appeal

There are two ways to appeal.  You can pick the one you want.  If you meet with us in person, it may help us decide your case.

- Case Review.  You have a right to review the facts in your file.  You can give us more facts to add to your file.  Then we'll decide your case again.  You won't meet with the person who decides your case.  This is the only kind of appeal you can have to appeal a medical decision.

- Informal Conference.  You'll meet with the person who decides your case.  You can tell that person why you think you're right.  You can give us more facts to help prove you're right.  You can bring other people to help explain your case.

## If You Want Help With Your Appeal

You can have a friend, lawyer or someone else help you.  There are groups that can help you find a lawyer or give you free legal services if you qualify.  There are also lawyers who do not charge unless you win your appeal.  Your local Social Security office has a list of groups that can help you with your appeal.

If you get someone to help you, you should let us know.  If you hire someone, we must approve the fee before he or she can collect it.

## If You Have Any Questions

For general information about SSI, visit our website at www.socialsecurity.gov on the Internet.  There, you will also find the law and regulations about SSI eligibility and SSI payment amounts.

SSA-L8166

04/19/2005

For general questions about SSI or specific questions about your case, you may call us toll-free at 1-800-772-1213, or call your local Social Security office at 650-994-2024.  Our lines are busiest early in the week and early in the month, so if your business can wait, it's best to call at other times.  We can answer most questions over the phone.  You can also write or visit any Social Security office.  The office that serves your area is located at:

> SOCIAL SECURITY
> SUITE 201
> 355 GELLERT BLVD
> DALY CITY CA 94015

If you do call or visit an office, please have this letter with you.  It will help us answer your questions.  Also, if you plan to visit an office, you may call ahead to make an appointment.  This will help us serve you more quickly when you arrive at the office.

Linda S. McMahon
Deputy Commissioner
 for Operations

Enclosure(s):
SSI Rules That Help You Work

SSA-L8166

04/19/2005

## SSI Rules That Help You Work

We want to tell you about some special Supplemental Security Income (SSI) rules that can help you while you are working or if you begin working. These rules can help you get or keep Medicaid and may help you keep getting some SSI even though you are working.

### How Your SSI May Change If You Work

If you work full-time or part-time and make $65 or less each month, your SSI will usually not change. As the money you earn from your job goes up, your SSI will go down. However, if you have no other income (money or support), you can earn up to $1,822.99 a month and still get at least $1 in SSI.

### If You Stop Working or Start Earning Less

If you stop working or start earning less, please let us know right away. We can increase your SSI checks, or start your SSI and Medicaid again if they have stopped. You may not even have to file a new application.

### Medicaid

If you get Medicaid, it will usually continue as long as you get SSI. If your SSI stops because you begin earning too much money, you can often keep getting Medicaid as long as the following are true:

- You continue to be disabled or blind under our rules; and

- You can't pay your medical bills without Medicaid.

### We Don't Count Some of Your Earnings Used for Work Expenses

The earnings you use for some of your working expenses may not count as income. For example, we sometimes don't count earnings used to pay for transportation to and from work. Also, we don't count the cost of special equipment that helps you to work.

### A Plan Can Help

You may be able to keep more of your SSI if you develop a special plan to support yourself. We call this a plan to achieve self-support (PASS). This plan lets you set aside money for a certain amount of time for a work goal. For example, you may set aside money to start a business, go to school, or get training for a job.

We don't count what you set aside when we figure your SSI. This can help keep you on SSI or help you get more SSI. A PASS may also help someone you know qualify for SSI.

SSA-L8166

04/19/2005

**If You Need Help Finding a Job**

We can ask someone who offers vocational rehabilitation services to help you find a job or give you training.

**If You Want To Know More**

If you want to know more about these rules, contact any Social Security office and ask to speak to someone about work incentives.

# EXHIBIT 4

# Social Security Administration
# Supplemental Security Income

SOCIAL SECURITY
355 GELLERT BLVD
SUITE 201
DALY CITY, CA 94015
Claim Number:
January 7, 2005
JOG

MARVELENA QUESADA

This is a very important letter about keeping your Supplemental Security Income (SSI) case active. Please read it carefully. If there is anything you do not understand, please get in touch with us right away.

### What You Need To Do

We need more information to decide if we can continue to pay you SSI. Therefore, it is important that you do the following:

- Come to see us on January 12, 2005 and ask for Mrs.                          . The office address is:

> SOCIAL SECURITY
> SUITE 201
> 355 GELLERT BLVD
> DALY CITY, CA 94015

### If We Don't Hear From You

We may stop your SSI if you don't respond to this request or contact us by January 12, 2005 to tell us why. If we stop your SSI, you could also lose any Medicaid you have now.

Before we stop your SSI, we will send you another letter to explain our decision. The letter will also explain your right to appeal the decision and how to continue getting SSI during the appeal.

- Bank statements: savings and checking accounts, and any other bank statements.

- Unemployment compensation payment records.

See Next Page

**EXHIBIT 4**

- Unemployment compensation payment records .

Householder statement completed and signed by Irene Desha.

When you call or come in, please have this letter with you.

**If You Have Any Questions**

If you have any questions or need help, please call us at 650-994-2024 x 3014 and ask for Mrs.

*Adria Leslie*

Adria Leslie
District Manager

# EXHIBIT 5

# Social Security Administration
## Supplemental Security Income
Notice of Planned Action

Date:  August 5, 2003
Claim Number:

932   0729,M10,042,006451      000006451 01 MB    0.309

TAMMY R COOPER

*Type of Eligibility*
Individual–Disabled

We are writing to tell you about changes in your Supplemental Security Income payments.  The following chart shows the SSI money due you for the months we changed.  As you can see from the chart, we are only changing your payments for future months.  The rest of this letter will tell you more about this change.

**Your Payments Will Be Changed As Follows:**

| From | Through | Amount Due Each Month |
|------|---------|------------------------|
| August 1, 2003 | Continuing | $0.00 |

## Why Your Payments Are Stopping

We are stopping the checks because we need correct information about your name, address or bank account.

Please contact your Social Security office as soon as possible.

## Information About Medicaid

For information about any change in your Medicaid eligibility caused by this action, you should get in touch with the county welfare department.

## You Can Review The Information in Your Case

The decisions in this letter are based on the law.  You have a right to review and get copies of the information in our records that we used to make the decisions explained in this letter.  You also have a right to review and copy the laws, regulations and policy statements used in deciding your case.  To do so, please contact us.  Our telephone number and address are shown under the heading "If You Have Any Questions."

See Next Page

SSA-L8155

**EXHIBIT 5**

08/05/2003

## Things To Remember

- We may be in touch with you later about any payments we previously made.

- This decision refers only to your claim for Supplemental Security Income payments.

- This determination replaces all previous determinations for the above periods.

- If you think you may be eligible for SSI again, please contact us. If you do not contact us before August 2004, you may have to file a new application. If you have to file a new application, the earliest month for which we can pay you is the month after you file.

## If You Disagree With The Decision

If you disagree with the decision, you have the right to appeal. We will review your case and consider any new facts you have.

- You have 60 days to ask for an appeal.

- The 60 days start the day after you get this letter. We assume you got this letter 5 days after the date on it unless you show us that you did not get it within the 5-day period.

- You must have a good reason for waiting more than 60 days to ask for an appeal.

- To appeal, you must fill out a form called "Request for Reconsideration." The form number is SSA-561. To get this form, contact one of our offices. We can help you fill out the form.

## Appeal In 10 Days To Keep Getting The Same Check

If you appeal within 10 days, you will continue to get the same check amount until we decide your case.

- The 10 days start the day after you get this letter.

- If you lose your appeal, you <u>might</u> have to pay back some or all of this money.

However, even if you appeal in 10 days, we may stop the check in September 2003 as shown on page 1 if both of the following are true:

- Our new decision is the same as the one appealed, and

- We send or give you a letter with our new decision in time to stop the check.

SSA-L8155

08/05/2003

## How To Appeal

There are three ways to appeal. <u>You can pick the one you want. If you meet with us in person, it may help us decide your case.</u>

- <u>Case Review.</u> You have a right to review the facts in your file. You can give us more facts to add to your file. Then we'll decide your case again. You won't meet with the person who decides your case.

- <u>Informal Conference.</u> You'll meet with the person who decides your case. You can tell that person why you think you're right. You can give us more facts to help prove you're right. You can bring other people to help explain your case.

- <u>Formal Conference.</u> This is a meeting like an informal conference. The difference is we can make people come to help prove you're right. We can make them bring important papers about your case, even if they don't want to help you. You can question these people at your meeting.

## If You Want Help With Your Appeal

You can have a friend, lawyer or someone else help you. <u>There are groups that can help you find a lawyer or give you free legal services if you qualify.</u> There are also lawyers who do not charge unless you win your appeal. Your local Social Security office has a list of groups that can help you with your appeal.

If you get someone to help you, you should let us know. If you hire someone, we must approve the fee before he or she can collect it.

## If You Have Any Questions

For general information about SSI, visit our website at www.socialsecurity.gov on the Internet. There, you will also find the law and regulations about SSI eligibility and SSI payment amounts.

For general questions about SSI or specific questions about your case, you may call us toll-free at 1-800-772-1213, or call your local Social Security office at 1-503-326-5018. We can answer most questions over the phone. You can also write or visit any Social Security office. The office that serves your area is located at:

SOCIAL SECURITY
1538 SW YAMHILL ST
PORTLAND OR 97205



08/05/2003

If you do call or visit an office, please have this letter with you.  It will help us answer your questions.  Also, if you plan to visit an office, you may call ahead to make an appointment.  This will help us serve you more quickly when you arrive at the office.

*Linda S. McMahon*

Linda S. McMahon
Deputy Commissioner
for Operations

# EXHIBIT 6

# Social Security Administration
# **Supplemental Security Income**
## Notice of Overpayment

SOCIAL SECURITY
1538 SW YAMHILL ST
PORTLAND, OR 97205
Claim Number:
September 30, 2003
D6

TAMMY R COOPER

We are writing to let you know that we have paid you $3,173.80 too much Supplemental Security Income (SSI) money. The overpayment happened August 2002 to July 2003.

You were receiving the California supplement payment for August 2002 to July 2003. You moved to California July 2002 and returned to Oregon August 2002. Our records show SSI was not aware of your return to Oregon until August 2003; therefore, this created outstanding overpayment.

Later in this letter, we'll give you a detailed explanation of your overpayment.

You must pay us back unless we decide you shouldn't have to pay us back or we are wrong about the overpayment. If you think you shouldn't have to pay us back or disagree with the decision about the overpayment, you can:

Ask for a waiver,

Ask for an appeal, or

Do both.

This letter will tell you more about these things you can do.

## **If We Don't Hear From You In The Next 30 Days**

We plan to collect this overpayment from your SSI checks. More information will follow.

If you ask for waiver or appeal in the next 30 days, we won't change your check until we decide the case

See Next Page          **EXHIBIT 6**

## If You Think You Shouldn't Have To Pay Us Back

You may not have to pay us back. Sometimes we can waive the collection of an overpayment, which means you won't have to pay us back. We can do this if both of the following are true.

It wasn't your fault that you got too much SSI money.

### AND

Paying us back would mean you can't pay your bills for food, clothing, housing, medical care, or other necessary expenses, or it would be unfair for some other reason.

If you think these are true about you, contact any Social Security office. You can ask for waiver at any time by completing the waiver form and returning it to us. The form is called Request for Waiver of Recovery or Change in Repayment Rate, Form SSA-632. We will be happy to help you fill out the form. We won't collect the overpayment while we decide if we can waive it.

## If You Disagree With The Decision

If you disagree with the decision, you have the right to appeal. We will review your case and look at any new facts you have.

You have 60 days to ask for an appeal.

The 60 days start the day after you get this letter. We assume you got this letter 5 days after the date on it unless you show us that you did not get it within the 5-day period.

You must have a good reason for waiting more than 60 days to ask for an appeal.

To appeal, you must fill out a form called "Request for Reconsideration." The form number is SSA-561. To get this form, contact one of our offices. We can help you fill out the form.

## How To Appeal

There are three ways to appeal. You can pick the one you want. If you meet with us in person, it may help us decide your case .

<u>Case Review</u> . You have a right to review the facts in your file. You can give us more facts to add to your file. Then we will decide your case again. You won't meet with the person who decides your case.

<u>Informal Conference</u> . You'll meet with the person who decides your case. You can tell that person why you think you're right. You can give us more facts to help prove you're right. You can bring other people to help explain your case.

<u>Formal Conference</u> . This is a meeting like an informal conference. The difference is we can make people come to help prove you're right. We can make them bring important papers about your case, even if they don't want to help you. You can question these people at your meeting

## If You Want Help With Your Appeal

You can have a friend, lawyer, or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your Social Security office has a list of groups that can help you with your appeal.

If you get someone to help you, you should let us know. If you hire someone, we must approve the fee before he or she can collect it.

## How To Pay Us Back

There are two ways you can pay us back.

As we said earlier, we plan to hold back money from your SSI check. We'll hold back $55.20 each month December 2003 until the overpayment is paid back. This is not more than 10 percent of your total income. Ten percent is the most we can hold back without your consent. Contact us if you want a different amount held back.

<u>OR</u>

Another way to pay us back is to send us a check or money order for the full amount of your overpayment of $3,173.80. Paying us this way is <u>voluntary</u> . Make the check or money order out to the Social Security Administration. Be sure to put your Social Security number on it. Please use the enclosed envelope to mail the check or money order to us. Also, be sure to enclose the payment stub with your check or money order

**If You Have Any Questions**

For general information about SSI, visit our website at www.ssa.gov on the
Internet. There you will also find the law and regulations about SSI eligibility and
SSI payment amounts.

For general questions about SSI or specific questions about your case, you may call
us toll-free at 1-800-772-1213 or call your local Social Security office at 503-326-
5019. If you call or visit our office, please bring this letter with you and ask for Ms.


*Randy Crockett*

Randy Crockett
Field Office Manager

## A Detailed Explanation Of The Overpayment

### Overpayment Summary

We overpaid you $3,173.80. The following table shows how your payment changed each month. The first column lists the month(s) we paid you incorrectly. The next column shows the amount we paid you for each month. The last column, <u>Correct Amount for Each Month</u> shows the amount we should have paid you for each month.

| Month | Incorrect Amount Paid | Correct Amount Due |
|---|---|---|
| August 2002 | $604.00 | $320.00 |
| September 2002 | $604.00 | $320.00 |
| October 2002 | $604.00 | $320.00 |
| November 2002 | $604.00 | $320.00 |
| December 2002 | $604.00 | $320.00 |
| January 2003 | $608.00 | $324.00 |
| February 2003 | $608.00 | $324.00 |
| March 2003 | $608.00 | $324.00 |
| April 2003 | $608.00 | $324.00 |
| May 2003 | $608.00 | $324.00 |
| June 2003 | $607.30 | $324.00 |
| July 2003 | $607.30 | $324.00 |

### Why You Were Overpaid

California Supplement payment for August 2002 to July 2003 caused overpayment.

PAYMENT STUB

To help us credit your record, please fill out this form and return it with your payment in the enclosed envelope.

NAME: TAMMY R COOPER

ACCOUNT NUMBER:

AMOUNT DUE: $3,173.80

ENTER AMOUNT ENCLOSED $_____