IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

AMERICAN COUNCIL OF THE BLIND, a District of Columbia non-profit corporation, TAMMY RENEE COOPER, SCARLETT MILES, MARVELENA QUESADA, ARLENE DOHERTY, ALICE MARJORIE DONOVAN, BILLIE JEAN KEITH, GEORGE P. SMITH, and DOROTHY JACKSON on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

MICHAEL ASTRUE, Commissioner of the Social Security Administration, in her official capacity, and SOCIAL SECURITY ADMINISTRATION,

Defendants.

No. C 05-04696 WHA

**ORDER: (1) DENYING MOTIONS TO DISMISS IN PART AND (2) REQUESTING FURTHER BRIEFING**

**INTRODUCTION**

In this disability-rights action, the issue is whether the Social Security Administration is obligated by the Rehabilitation Act to provide special services to blind recipients without regard to whether blindness (as opposed to age or some other condition) is the basis for their benefits. This order holds the Social Security Administration is so obligated, notwithstanding the special notice provision in the Social Security Act. For the reasons stated below, defendants' Rule 12(b)(1) motion is **DENIED** and defendants' Rule 12(b)(6) motion is **DENIED** in part. In addition, this order requests further briefing on the issues outlined below.

**STATEMENT**

**1. PLAINTIFFS' CLAIMS.**

Plaintiffs are eight visually impaired individuals and the American Council for the Blind, a national membership organization of visually impaired persons. Each individual plaintiff receives some kind of Social Security benefit, either through the Old-Age, Survivors, and Disability Insurance ("OASDI") program or the Supplemental Security Income ("SSI") program. At the time of the complaint, one of these plaintiffs (Dorothy Jackson) was also a representative payee for her husband, an SSI recipient. Plaintiffs seek to represent a class of similarly situated persons.

Plaintiffs assert claims under Section 504 of the Rehabilitation Act and the due process clause. According to the complaint, defendants "have and continue to discriminate unlawfully against the named Plaintiffs and the class members by failing to communicate with Plaintiffs and the class members in an accessible format" in violation of Section 504 (Compl. ¶ 103). The complaint further alleges that defendants' failure to communicate in an accessible format denies plaintiffs "adequate notice and an opportunity to be heard" regarding their Social Security benefits (a protected property interest) in violation of the due process clause. Plaintiffs assert subject-matter jurisdiction under 28 U.S.C. 1331 and 28 U.S.C. 1361. They request declaratory relief and a permanent injunction regarding the agency's duties to provide information in accessible formats. Defendants move to dismiss plaintiffs' claims for lack of subject-matter jurisdiction and failure to state a claim.

**2. NOTICE POLICY.**

In 1988 and 1990, Congress added a special notice provision to the Social Security Act.[1] By its own terms, the notice provision does not apply to all blind participants but rather to those participants who receive or apply for benefits *on the basis* of blindness. Pursuant to this provision, individuals receiving benefits based on their blindness are "entitled" to elect from three different methods of receiving notice for any decision or determination: (i) a mailed

---

[1] Congress extended the notice provision to the OASDI program and the SSI program at different times.

2

notice with a follow-up phone call; (ii) certified mail; or (iii) "notification by some alternative procedure established by the Commissioner of Social Security and agreed to by the individual." 42 U.S.C. 1383(1).

The agency implements this statutory provision through its Program Operations Manual System ("POMS"). Pursuant to agency policy via POMS, participants may elect to receive notice of decisions and determinations either through: (i) certified mail; (ii) first-class mail followed by a telephone call; or (iii) first-class mail. By the terms of the policy as stated in POMS, the options only apply to individuals applying for or receiving benefits "by reason of blindness." The parties dispute whether the agency in practice extends these notice options to all blind or visually impaired recipients of Social Security benefits or only those recipients who receive benefits *based on* blindness. For example, plaintiffs contend that defendants do not provide the follow-up phone call to individuals who are blind but receive benefits based on age.

### 3. THE REHABILITATION ACT AND ITS REGULATIONS.

Section 504 of the Rehabilitation Act, enacted in 1973, reads in pertinent part (29 U.S.C. 794):

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

In addition to Section 504's general mandate against discrimination, regulations promulgated by the Department of Health and Human Services pursuant to Section 504 set forth requirements concerning notice to individuals with disabilities. In particular, the regulations stipulate that the agency "shall furnish appropriate auxiliary aids where necessary to afford an individual with handicaps an equal opportunity" to participate in offered programs. The regulations then go on to name "readers, Brailled materials, [and] audio recordings" as examples of auxiliary aids that are appropriate for persons with impaired vision. 45 C.F.R. 85.3.

### 4. ADMINISTRATIVE PROCEDURES PURSUED BY PLAINTIFFS.

Two of the individual plaintiffs, Billie Jean Keith and Tammy Renee Cooper, pursued their discrimination claims through procedures under Section 504 of the Rehabilitation Act, which are set forth in 45 C.F.R. 85.61. Plaintiffs have shown that Keith and Cooper exhausted administrative remedies pursuant to these procedures, as follows.

In March 1994, plaintiff Keith received an overpayment determination from the agency, which she then contested through proceedings available under the Social Security Act. She eventually prevailed in that dispute years later. In December 1994, on the advice of an agency employee, plaintiff Keith separately filed a discrimination complaint with the Office of Civil Rights of the Department of Health and Human Services, which housed the Social Security agency at that time.[2] In her discrimination complaint, she asserted that the agency's refusal to provide her with communications in large print amounted to discrimination in violation of Section 504 of the Rehabilitation Act. In August 1995, the Regional Office of General Counsel denied Ms. Keith's complaint, finding the agency was not in violation of Section 504 as alleged. Keith did not receive a letter informing her of this decision until 1997, at which point she appealed the decision (Keith Decl. ¶ 8–31). Five years later, in 1999, she received a letter from the Office of General Counsel explaining the office's delay in responding to her complaint (Keith Decl. Exh. R):

> In June of 1998 . . . our office was considering the issues raised in your complaint on a nationwide scale and we would defer response to your individual complaint until we have made a recommendation to the Agency regarding the handling of these and other issues nationwide. We have since determined not to grant nationwide relief to visually impaired individuals under the civil right laws.

The letter stated that the office still intended to investigate her case individually. In July 1999, the Regional Chief Officer sent her a letter stating that "[t]here is no support for your claim that your civil rights were violated." The letter continued: "We are satisfied that SSA provides sufficient alternatives to ensure that blind individuals, like yourself, receive effective communication from SSA" (Keith Decl. Exh. S). Shortly thereafter, Keith appealed the

---

[2] The Social Security Administration became a separate agency in 1995.

4

regional office's decision to the Office of the General Counsel. To date, Keith has not received notice of the results of her appeal.

In September 2003, the agency suspended the benefits of plaintiff Cooper because of an alleged overpayment. After an attorney helped her resolve that matter, she filed an administrative complaint with the Office of General Counsel pursuant to 45 C.F.R. 85.61 in 2004. She brought the discrimination complaint on behalf of herself and all similarly situated persons, alleging discrimination under Section 504 and requesting that the agency communicate through formats accessible to the visually impaired. In June 2004, Cooper received a "Letter of Findings" from the Office of General Counsel, in which the Office concluded that "Ms. Cooper was not discriminated against on the basis of a disability (blindness)" (Wilde Decl. Exh. D). In July 2004, Cooper filed a timely request for reconsideration. It is now almost four years later and Cooper has not received a decision in response to her request (Wilde Decl. ¶¶ 15–19).

In addition, plaintiffs allege that each of them has repeatedly requested that the agency provide notices in an accessible format.

**ANALYSIS**

**1.  LEGAL STANDARD.**

Under Federal Rule of Civil Procedure 12(b)(1), a court should dismiss a complaint where there is no subject-matter jurisdiction. A party seeking to prove jurisdiction must overcome the presumption that a federal court lacks subject-matter jurisdiction. *See Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). In determining whether it has subject-matter jurisdiction, a court may consider facts outside the pleadings. *See St. Clair v. City of Chico*, 880 F.2d 199, 201–02 (9th Cir. 1989).

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). All material allegations of the complaint are taken as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 340 (9th Cir. 1996). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his

5

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964–65 (2007).[3]

### 2. SUBJECT-MATTER JURISDICTION.

#### A. Jurisdiction Under Section 1331.

Defendants argue that the Court lacks federal-question jurisdiction over plaintiffs' claims because the claims arise under the Social Security Act and plaintiffs have not met the Act's requirements for judicial review. Plaintiffs, in response, argue that their claims arise only under the Rehabilitation Act and the due process clause. This order holds that plaintiffs' claims do *not* arise under the Social Security Act and are therefore not subject to the requirements of Section 405(g).

The Social Security Act contains an exclusive remedy provision, Section 405(h), which bars suits brought under Section 1331 "to recover on any claim arising under" the Social Security Act. 42 U.S.C. 405(h). Claims deemed to "arise under" th**e** Social Security Act can only be brought in federal court in accordance with the judicial review prerequisites of Section 405(g). These prerequisites include: (i) presentment of a claim for benefits to the Secretary of the agency and (ii) exhaustion of administrative remedies. *Bowen v. City of New York*, 476 U.S. 467, 483 (1986). The first element (presentment) is *not* waivable but the second element (exhaustion) *is* waivable. *Briggs v. Sullivan,* 886 F.2d 1132, 1138 (9th Cir. 1989).

The Supreme Court has liberally construed the meaning of "arising under" as it is used in Section 405(h). In *Weinberger v. Salfi,* 422 U.S. 749, 760–61 (1975), the Court held that a claim that arises under the Social Security Act can be barred by Section 405(h) even if it also arises under the Constitution if the Act "provides both the standing and the substantive basis for the presentation of their constitutional contentions." In *Shalala v. Illinois Council*, 529 U.S. 1, 10, 15 (2000), the Supreme Court concluded that a challenge by an association of nursing

---

[3] Internal citations and quotations have been omitted unless otherwise indicated.

6

homes to Medicare regulations on "general legal grounds" arose under the Social Security Act despite the fact that the association made no immediate claim for benefits. The Court explained that its precedent "foreclose[d] distinctions based upon the 'potential future' versus the 'actual present' nature of the claim, the 'general legal' versus the 'fact-specific' nature of the challenge, the 'collateral' versus the 'noncollateral' nature of the issues, or the 'declaratory' versus 'injunctive' nature of the relief sought." *Id.* at 13–14.

In a 1992 decision, the Ninth Circuit held that claims predicated on Section 504 of the Rehabilitation Act do not "arise under" the Social Security Act. *J.L. v. Soc. Sec. Admin.,* 971 F.2d 260, 263 (9th Cir. 1992), *overruled in part on other grounds, Lane v. Pena*, 518 U.S. 187 (1996). There, a putative class of mentally handicapped persons alleged that the agency's complicated application procedures — which made it difficult for mentally handicapped individuals to apply for benefits — violated Section 504. *Id.* at 262. The Ninth Circuit concluded that the claims were not subject to the Section 405(h) bar but nonetheless decided to require exhaustion of administrative remedies because of "prudential concerns." *Id.* at 270.

Defendants argue that the holding in *J.L.* is no longer good law given the Supreme Court's more recent holding in *Illinois Council.* Indeed, in *Davis v. Astrue,* 513 F. Supp. 2d 1137, 1144 (N.D. Cal 2007), Judge Marilyn Hall Patel concluded that the holding in *J. L.* "appears inconsistent with the Supreme Court's subsequent holding in *Illinois Council* that legal challenges to agency practices and procedures are subject to the limitations in Section 405(h)." In *Davis,* a mentally ill individual whose benefits had been terminated brought claims under the Rehabilitation Act and due process clause, challenging the procedures the agency used for reviewing the benefits of mentally ill beneficiaries. *Id.* at 1141. Judge Patel concluded that the claims arose under the Social Security Act but that waiver of Section 405(g)'s exhaustion requirement was appropriate. *Id.* at 1145–46.

Assuming arguendo that *J.L.* is eviscerated (on this point of law) and that *some* Rehabilitation Act claims could "arise under" the Social Security Act, as in *Davis,* this order concludes that this is *not* such a case. The claims here must be distinguished from the claims in *Davis, Illinois Council,* and *Salfi.* In those cases the plaintiffs were either making an immediate

7

claim for benefits or attempting to establish a future right to benefits. Here, plaintiffs' discrimination claims are not necessarily tied to a present or future claim for benefits under the Social Security Act. To be sure, meaningful access to Social Security communications would aid plaintiffs in pursuing future claims for benefits. But plaintiffs also seek such access for reasons unrelated to benefits — for example, in order to reduce the logistical burden of arranging for a sighted person to read them a notice or to reduce the risks associated with exposing personal information (*e.g.*, social security numbers) to sighted persons. Moreover, unlike in *Illinois Council*, where the plaintiffs challenged regulations that imposed sanctions for nursing home deficiencies, and in *Salfi,* where the plaintiffs challenged a substantive rule for determining benefits, here, plaintiffs do not dispute the standards for determining benefits (or sanctions), but rather the procedures and practices for *notifying* participants of benefit determinations. Plaintiffs' due process claims anticipate a future claim for benefits but they do not challenge the substantive law for determining those benefits, only the methods through which individuals are notified of all manner of notices from the agency.

The Rehabilitation Act, not the Social Security Act, establishes the basis for plaintiffs' discrimination claims because the Rehabilitation Act creates the duty on the part of the agency to provide meaningful access to participants. As for the due process claims, it is the due process clause itself, not the Social Security Act, that provides the basis for plaintiffs' challenge to the agency's notice procedures.

Indeed, under defendants' Catch-22 interpretation of Section 405, the Social Security Act would *never* provide the standing for claims such as plaintiffs' when brought independently of a claim for benefits. The Catch 22 is that plaintiffs' grievance is untethered to any benefit claim and relates only to notices. Applying Section 405(h) therefore risks depriving plaintiffs of *any* judicial review of their claims. In such a situation, the so-called "*Michigan Academy* exception" cautions against application of Section 405(h)'s bar. In *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 681 (1986), the Supreme Court declined to extend the Section 405(h) judicial bar to claims concerning Medicare Part B because to do so would mean the claims would receive no judicial review at all. "This is an extreme position,

8

1  and one we would be most reluctant to adopt without a showing of 'clear and convincing
2  evidence' to overcome the strong presumption that Congress did not mean to prohibit all
3  judicial review of executive action." *Id.* at 680–681.

4  Here, adopting defendants' construction of Section 405(g) and Section 405(h) "would
5  not simply channel review through the agency, but would mean no review at all." *Ill. Council*,
6  529 U.S. at 19 (characterizing the holding in *Michigan Academy*).  Defendants suggest that
7  individuals cannot satisfy the presentment requirement in the absence of a deprivation of
8  benefits.  Defendants concede that five of the plaintiffs — all of whom have in the past
9  experienced some deprivation of benefits — have satisfied the presentment requirement.
10  But defendants argue that the other three plaintiffs — who have not suffered a deprivation of
11  benefits — cannot satisfy the presentment requirement.  Further, in a footnote, defendants make
12  clear that a challenge to the notice provision "will not be entitled to" judicial review in the
13  absence of an initial determination concerning benefits (Br. 8, n.6).  If discrimination claims
14  such as plaintiffs' "arise under" the Social Security Act, as defendants argue, then a plaintiff
15  would *only* be able to receive judicial review of a discrimination claim when paired with a
16  claim for benefits.  This would mean that a participant who is currently receiving benefits
17  would not be able to receive judicial review of her discrimination claim unless and until she
18  somehow receives an adverse determination from the agency — *e.g.*, her benefits are
19  suspended, terminated, or reduced.  Under *Michigan Academy,* this is an "extreme position" that
20  should be eschewed.  This order finds no evidence that Congress intended this "extreme
21  position" and therefore declines to adopt defendants' construction of Section 405(h)'s reach.

22  Indeed, pamphlets and correspondences distributed by defendants encouraged plaintiffs
23  to pursue discrimination claims through the administrative proceedings available *under*
24  *Section 504 regulations* (Wilde Decl. Exh. A).  A pamphlet titled "Civil Rights Complaint
25  Procedures for the Public" and labeled as an "SSA Publication" lays out the procedures
26  available to individuals who wish to file a discrimination complaint against the agency.
27  The procedures described are those made available via regulations under the Rehabilitation Act
28  (45 C.F.R. 85.61) — not via the Social Security Act.  These pamphlets and correspondences

9

reflect the assumption that discrimination claims such as plaintiffs arise under the Rehabilitation Act and not the Social Security Act. In their reply, defendants assert that they should not be held responsible for these materials because "nothing in the section 504 regulations indicates that they culminate in an automatic right of judicial review where jurisdiction is foreclosed by other applicable statutes" (Reply 11, n.9). Perhaps defendants now seek to abandon an earlier position in order to gain strategic advantage in these litigation proceedings. This would be troubling enough. But even more troubling is the possibility that the agency channeled the discrimination claims of plaintiffs and others into a black hole from which there is no escape.

In sum, this order holds that plaintiffs' claims do not arise under the Social Security Act and are therefore not barred by Section 405. The Rehabilitation Act and the due process clause provide the "standing and the substantive basis" for plaintiffs' claims, not the Social Security Act.

### B. Whether to Proceed Under the Rehabilitation Act Or the Administrative Procedure Act.

Defendants further contend that Section 504 of the Rehabilitation Act "contains no private right of action" against the agency and that Congress intended claims such as plaintiffs to be brought pursuant to the APA. In *J.L.,* the Ninth Circuit concluded that Section 504 created a private right of action against the Social Security Administration, including claims for equitable relief and money damages. *J.L.*, 971 F.2d at 269. Subsequent to that decision, the Supreme Court in *Lane v. Pena* overruled *J.L.* in part by concluding that Section 504 did not create a claim for *money* damages against a federal agency. *Lane*, 518 U.S. at 197. Plaintiffs argue, however, that in *Lane* the Supreme Court did not bar a private right of action against a federal agency for *equitable* relief. Indeed, the district court in *Mendez v. Gearan*, 947 F. Supp. 1364, 1368 (N.D. Cal. 1996) (Henderson, J.), concluded that a private right of action for equitable relief is still available in the Ninth Circuit — even in the wake of *Lane*.

10

1  *Id.* at 1368 (concluding that *Lane* did not "have the effect of eliminating actions, only
2  eliminating one formerly available remedy").[4]

3  In *Mendez*, the Peace Corps argued that a challenge to its medical eligibility rules and
4  procedures should be brought under the APA and not the Rehabilitation Act.  The district court
5  conducted a comparative analysis of the "advantages and disadvantages of applying one statute
6  over the other in various contexts," concluding that plaintiff's case was "more appropriately
7  brought under the standards established by [Section] 504 of the Rehabilitation Act." *Id.* at
8  1368–71.  The court pointed out that applying the APA was particularly appropriate when a
9  case "involves facts, policies, and statutes that are within the agency's expertise" but that the
10 APA may not be appropriate when "the focus of the review is on information outside the ken of
11 the agency." *Id* at 1369.  For example, "[w]here the primary issue in a challenge to a federal
12 agency's action is the application of a statute that the agency is not uniquely qualified to
13 interpret, utilizing the APA would not be an efficient use of resources." *Ibid.*  On the other
14 hand, the court noted that a challenge to a general policy of an agency, which might require
15 insight into how the agency operates and the ultimate mission of the agency, would make
16 application of the APA more appropriate. *Ibid.*

17 This order concludes that jurisdiction under the Rehabilitation Act is proper here at least
18 for purposes of deciding the main legal issue presented, namely, whether the special statutory
19 notice provision of the Social Security Act limits the duties created by the Rehabilitation Act.

20 **3. SECTION 504 TRUMPS THE SPECIAL NOTICE PROVISION.**

21 At the core of the parties' dispute is the question of how the special notice provision in
22 the Social Security Act interacts with Section 504 of the Rehabilitation Act and its regulations.
23 Defendants concede that the Rehabilitation Act applies to the agency but assert that the

---

[4] Defendants also argue that the Supreme Court's 2001 decision in *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001), in which the Court articulated a new test for determining when a private right of action can be implied from a statute, casts further doubt on the continued vitality of the holding in *J.L.*  The Court has a duty to follow Ninth Circuit authority, however, and this order concludes that a private right of action for equitable relief still exists under Ninth Circuit precedent. *See Hart v. Massanari,* 266 F.3d 1155, 1170 (9th Cir. 2001) ("Binding authority must be followed unless and until overruled by a body competent to do so").

11

agency's duties are confined by the special notice provision.[5] According to defendants, the special notice provision is a "legislative declaration" of the agency's duties under the Rehabilitation Act. This order rejects that argument. By its own terms, the special notice provision applies only to participants who receive benefits based on blindness. The provision does not address the needs of blind participants who receive benefits on another basis, for example, age. The needs of this latter group are real and legitimate. That Congress somehow intended to relieve the agency of its obligations to them under the Rehabilitation Act is far-fetched. Congress intended to *improve* the notice provided to blind recipients when it passed the special notice provision, not to *limit* such notice.

This order holds that defendants have a continuing duty under Section 504 of the Rehabilitation Act to provide meaningful access to all visually disabled recipients of and applicants to Social Security programs. Defendants' motion to dismiss for failure to state a claim is therefore **DENIED** in part. Resolution of all other issues concerning the merits of plaintiffs' claims is postponed pending a ruling on the proper course of future proceedings, as discussed in more detail below.

Having resolved the fundamental legal question that divides the parties, the Court requests the assistance of counsel in determining how to proceed. The parties should brief the merits of proceeding via the following options:

1. Actively continue litigating this case under Section 504 of the Rehabilitation Act, decide the issue of class certification, and determine the scope of relief, if any.

2. Stay the proceedings of the case so that the agency can engage in rulemaking or pursue other agency action in light of the ruling on the merits made herein. This course would require that the agency concede the correctness

---

[5] At the hearing, defendants conceded that the Rehabilitation Act applies to the agency.

of this ruling on the merits. The Court would maintain jurisdiction to review any rule or policy subsequently adopted.[6]

    3.    Remand the action to the agency for rulemaking or other agency action. This would also require that the agency concede the correctness of this ruling on the merits. This course, however, might be problematic because there seems to be no affirmative agency action forming the predicate for original subject-matter jurisdiction.

    4.    Certify this order for interlocutory review under 28 U.S.C. 1292(b) and stay all proceedings.

The parties will have until **MAY 7, 2008, AT NOON** to file memoranda addressing the options outlined above, or any other options the parties may suggest.

## CONCLUSION

For the reasons stated above, this order **DENIES** defendants' motion to dismiss for lack of subject-matter jurisdiction and **DENIES** in part defendants' motion to dismiss for failure to state a claim. This order requests further briefing on the issues outlined above.

**IT IS SO ORDERED.**

Dated: April 23, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[6] The case presents an interesting challenge in that some of the issues presented seem particularly well-suited to resolution by a court while others seem particularly well-suited to resolution by the agency. A court is better positioned to resolve the legal disputes presented — particularly given that defendants are not uniquely qualified to interpret the Rehabilitation Act. On the other hand, defendants may well be in a better position to craft workable and effective solutions to the disability problems identified given its extensive knowledge of the operations of the agency.

13