WONDIE RUSSELL (Bar No. 77990)
PETER B. CROSBY (Bar No. 115588)
ESTA L. BRAND (Bar No. 83329)
JACOB N. FOSTER (Bar No. 250785)
ADIL HAQ (Bar No. 255435)
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA  94104
Telephone: +1.415.772.6000
Facsimile: +1.415.772.6268
wondie.russell@hellerehrman.com

ARLENE B. MAYERSON (Bar No. 79310)
LARISA M. CUMMINGS (Bar No. 131076)
SILVIA YEE (Bar No. 222737)
DISABILITY RIGHTS EDUCATION AND DEFENSE FUND, INC.
2212 Sixth Street
Berkeley, CA  94710
Telephone: +1.510.644-2555
Facsimile: +1.510.841.8645
amayerson@dredf.org
*See Signature Page for List of Additional Counsel*

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN COUNCIL OF THE BLIND, a District of Columbia non-profit corporation, TAMMY RENEE COOPER, SCARLETT MILES, MARVELENA QUESADA, ARLENE DOHERTY, ALICE MARJORIE DONOVAN, BILLIE JEAN KEITH, GEORGE P. SMITH, DOROTHY JACKSON, , MARY ANN ALEXANDER, and LAURA M. RUSSELL, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL ASTRUE, Commissioner of the Social Security Administration, in his official capacity, and SOCIAL SECURITY ADMINISTRATION, <br><br> Defendants. | Case No.: C 05-04696 WHA <br><br> PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT <br><br> Date:     Thursday, September 4, 2008 <br> Time:    8:00 a.m. <br> Room:   Courtroom 9, 19th Floor <br> Judge:   The Honorable William Alsup |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION ........................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................... 2

I.     INTRODUCTION ........................................................................................................ 2

II.    STATEMENT OF THE ISSUE TO BE DECIDED ................................................... 3

III.   STATEMENT OF THE RELEVANT FACTS ........................................................... 4

IV.   ARGUMENT ................................................................................................................ 8

       A.   The Individual Plaintiffs Meet the Standards for Certification
           Under Rule 23(a). ........................................................................................ 10

           1.   The Size of the Class, Along with Other Factors, Makes
               Joinder of All Class Members Impracticable. .................................... 10

           2.   There Are Questions of Law or Fact Common to All
               Members of the Class. ........................................................................ 12

           3.   The Named Plaintiffs' Claims Are Typical of the Claims of
               the Class. ............................................................................................ 14

           4.   The Named Plaintiffs and Their Attorneys Will Fairly And
               Adequately Protect the Interests of the Class. .................................... 16

                 a.   The Individual Plaintiffs' Interests are Not
                     Antagonistic to Those of the Class. .......................................... 16

                 b.   Plaintiffs' Counsel Are Qualified to Litigate This
                     Action. ...................................................................................... 17

       B.   This Case Satisfies Rule 23(b)(2) Because Defendants Have Acted
           on Grounds Generally Applicable to the Class Making Final
           Injunctive and Declaratory Relief Appropriate. .......................................... 18

       C.   Notice to Absent Class Members Is Not Required in a Rule
           23(b)(2) Case Where the Claims Seek Only Declaratory or
           Injunctive Relief. ........................................................................................ 19

V.    CONCLUSION ............................................................................................................ 20

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997) ...................................................................................................... 18

*Armstrong v. Davis,*
    275 F.3d 849 (9th Cir. 2001) ....................................................................................... 13

*Arnold v. UA Theatre Circuit, Inc.,*
    158 F.R.D. 439 (N.D. Cal 1994) .................................................................................. 12

*Bates v. United Parcel Service,*
    465 F.3d 1069 (9th Cir. 2006) ...................................................................................... 9

*Beltran v. Myers,*
    701 F.2d 91 (9th Cir. 1983), *cert. denied sub nom. Rank v. Beltran*, 462
    U.S. 1134 (1983) ......................................................................................................... 20

*Blackie v. Barrack,*
    524 F.2d 891 (9th Cir. 1975) ......................................................................................... 8

*Burkhalter Travel Agency v. MacFarms Intern., Inc.,*
    141 F.R.D. 144 (N.D. Cal. 1991) .................................................................................. 8

*California Rural Legal Assistance v. Legal Services Corp.,*
    917 F.2d 1171 (9th Cir. 1990) ..................................................................................... 12

*Chambers et al. v. City and County of San Francisco,*
    No. C06-06346 WHA (N.D. Cal. July 12, 2007) ........................................................ 9

*Crawford v. Honig,*
    37 F.3d 485 (9th Cir. 1994) ......................................................................................... 20

*Cruz v. Bowen,*
    672 F.Supp. 1300 (N.D. Cal. 1987) ............................................................................ 10

*Dukes v. Wal-Mart, Inc.,*
    508 F.3d 1168 (9th Cir. 2007) ....................................................................... 10, 12, 16

*EEOC v. Gen. Telephone Co.,*
    599 F.2d 322 (9th Cir. 1979), *aff'd*, 446 U.S. 318 (1980) ................................... 19, 20

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974) ...................................................................................................... 8

*Elliott v. Weinberger,*
    564 F.2d 1219 (9th Cir. 1977) ............................................................................... 18, 20

*Fields v. Maram,*
    No. 04 C 0174 2004 WL 1879997 (N.D. Ill. Aug. 17, 2004) ...................................... 9

*Forbush v. J.C. Penney Co.*,
    994 F.2d 1101 (5th Cir. 1993) ........................................................................................ 12

*General Telephone Co. v. Falcon*,
    457 U.S. 147 (1982) ......................................................................................... 9, 12, 14

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ...................................................................................... 14

*Harris v. Palm Springs Alpine Estates*,
    329 F.2d 909 (9th Cir. 1964) ...................................................................................... 10

*In re MDC Holdings Securities Litig.*,
    754 F. Supp 785 (S.D. Cal. 1990) ............................................................................... 17

*In re Northern Dist. of Cal. Dalkon Shield IUD Prods. Liab. Litig.*,
    693 F.2d 847 (9th Cir. 1982) ...................................................................................... 16

*Jordan v. County of Los Angeles*,
    669 F.2d 1311 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810
    (1982) .............................................................................................................. 13, 14, 15

*Joyce v. City and County of San Francisco*,
    No. C-93-4149, 1994 WL 443464 (N.D. Cal. Aug. 4, 1994) ........................................... 9

*Lancaster v. Tilton*,
    No. C 79-01630-WHA, 2006 WL 2850015 (N.D. Cal. Oct. 4, 2006) ................... 10, 13, 14, 16

*Lightbourn v. County of El Paso*,
    118 F.3d 421 (5th Cir. 1997) ...................................................................................... 15

*Lopez v. Heckler*,
    572 F. Supp. 26 (C.D. Cal. 1983), *modified on other grounds*, 725 F.2d
    1489 (9th Cir.), *vacated and remanded on other grounds*, 469 U.S. 1082
    (1984) ........................................................................................................................ 17

*Lovely H. v. Eggleston*,
    235 F.R.D. 248 (S.D.N.Y. 2006) .................................................................................. 9

*Lynch v. Rank*,
    604 F. Supp. 30 (N.D. Cal. 1984), *aff'd*, 747 F.2d 528 (9th Cir. 1984) ............................ 10, 11

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997) .................................................................................... 13, 19

*Molski v. Gleich*,
    318 F.3d 937 (9th Cir. 2003) ...................................................................................... 19

*National Federation of the Blind v. Target Corporation*,
    No. C 06-1802 2007 WL 2846462 (N.D. Cal. Oct. 2, 2007) ......................................... 15

*Raymond v. Rowland*,
    220 F.R.D. 173 (D.Conn. 2004) ................................................................................... 9

*Schwartz v. Harp*,
    108 F.R.D. 279 (C.D. Cal. 1985) ................................................................................. 15

*Serritella v. Engleman*,
    339 F. Supp. 738 (D.N.J.), *aff'd*, 462 F.2d 601 (3d Cir. 1972)...................................................17

*Stolz v. United Bd. of Carpenters and Joiners of Am.*,
    620 F.Supp. 396 (D. Nev. 1985) ...............................................................................................18

*Walters v. Reno*,
    145 F.3d 1032 (9th Cir. 1998) ...........................................................................................12, 19

*Wofford v. Safeway Stores, Inc.*,
    78 F.R.D. 460 (D.C. Cal. 1978) .................................................................................................12

*Wyatt v. Poundstone*,
    169 F.R.D. 155 (M.D. Ala. 1995) .......................................................................................10, 13

*Yaffe v. Powers*,
    454 F.2d 1362 (1st Cir. 1972) .................................................................................................9

**Statutes**

29 U.S.C. §§ 794 & 794a (2000)................................................................................................2

**Rules**

FED. R. CIV. P. 23(a) ...............................................................................................................passim

FED. R. CIV. P. 23(a)(1) ...................................................................................................... 10, 12

FED. R. CIV. P. 23(a)(2) ...................................................................................................... 12, 13

FED. R. CIV. P. 23(a)(3) ...................................................................................................... 14, 16

FED. R. CIV. P. 23(a)(4) ................................................................................................ 16, 17, 18

FED. R. CIV. P. 23(b) ........................................................................................................... 12, 18

Fed. R. Civ. P. 23(b)(2) .........................................................................................................passim

Fed. R. Civ. P. 23(c)(2) .............................................................................................................19

**Regulations**

20 C.F.R. § 416.621(c) ..................................................................................................................7

20 C.F.R. § 416.635 (a) .............................................................................................................7, 15

20 C.F.R. § 416.635 (b) ...............................................................................................................6

28 C.F.R. § 35.160-164 ................................................................................................................5

45 C.F.R. § 85.51.........................................................................................................................5

**Treatises**

2 Newberg on Class Actions § 8.05 (1995)................................................................................19

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

TO:    DEFENDANTS MICHAEL ASTRUE, COMMISSIONER OF THE SOCIAL SECURITY

ADMINISTRATION, IN HIS OFFICIAL CAPACITY, AND SOCIAL SECURITY

ADMINISTRATION

PLEASE TAKE NOTICE that on September 4, 2008, at 8:00 a.m., or as soon thereafter as

counsel may be heard, in the United States District Court for the Northern District of California,

Courtroom 9, 19th Floor, 450 Golden Gate Avenue, San Francisco, California, the individual Plaintiffs

Tammy Renee Cooper, Scarlett Miles, Marvelena Quesada, Arlene Doherty, Alice Marjorie Donavan,

Billie Jean Keith, George P. Smith, Dorothy Jackson, Laura Russell, Mary Ann Alexander, and

organizational Plaintiff American Council of the Blind ("ACB")[1] will and do hereby move under Rule

23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure to certify a plaintiff class defined as

follows:

Individuals with visual impairments that substantially limit the major life activity of seeing who

require that materials be in an accessible format in order to participate in programs and activities

implemented by the SSA as applicants, beneficiaries, recipients and representative payees.

The individual Plaintiffs move for certification because the above-defined plaintiff class is so

numerous that joinder would be impracticable, there are common questions of law or fact among the

class members, the claims of the representative plaintiffs are typical of those of the class, and the

representative plaintiffs will fairly and adequately represent the class interests.  Additionally,

Defendants have acted or refused to act on grounds applicable to the entire class, thereby denying the

civil rights of each member of the class and rendering declaratory and injunctive relief appropriate to

the class as a whole.

---

[1] ACB is a national membership organization with approximately eighteen thousand members
nationwide, most of whom are blind or visually impaired.  (*See* Second Amended Complaint ["SAC"]
¶ 5.)  ACB's purposes include "[s]erving as a representative national organization of blind people" and
"elevating the social, economic and cultural levels of blind people."

1     This Motion is based on the following Memorandum of Points and Authorities, the

2     Declarations of Arlene Mayerson, Wondie Russell, and Gerald McIntyre filed herewith, the arguments

3     of counsel, and all other relevant pleadings, briefs and evidence made of record.

4                        **MEMORANDUM OF POINTS AND AUTHORITIES**

5     **I.      INTRODUCTION**

6           The individual Plaintiffs seek an Order certifying this case as a class action pursuant to Rule 23

7     of the Federal Rules of Civil Procedure.  Plaintiffs represent a class of individuals with visual

8     disabilities who receive or are applying for benefits through the Old-Age, Survivors, and Disability

9     Insurance ("OASDI") program on the basis of earnings history; the Supplemental Security Income

10    ("SSI") program on the basis of financial need and either age, blindness, or other disabilities; the

11    Special Veterans Benefits (SVB) program on the basis of financial need, age, World War II veteran

12    status, and residence outside the United States; or who receive or are applying for the Low Income

13    Subsidy under the Medicare Part D Prescription Drug Benefit.  Two of the Plaintiffs are also

14    representative payees for either a minor child who receives auxiliary benefits under the OASDI

15    program or a child with a developmental disability who receives benefits under the SSI program.  (*See*

16    Second Amended Complaint ["SAC"] ¶¶ 1, 6-15.)  They bring an action to enforce their rights to

17    receive information in alternative formats that would enable them to have an equal opportunity to

18    participate in SSA programs. The individual Plaintiffs seek declaratory and injunctive relief under

19    Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 & 794a (2000) ("Section 504"), and

20    the Due Process Clause of the Fifth Amendment to the Constitution.  (SAC ¶¶ 2, 105, 109, 111-112.)

21          SSA regularly communicates with blind and visually impaired persons in standard print format

22    that they cannot read.  (SAC ¶ 1.)  SSA also regularly suspends the benefits of blind and visually

23    impaired persons for failing to comply with requirements set forth in standard print documents and for

24    failing to return standard print forms that they cannot complete due to their visual impairment.  (SAC

25    ¶¶ 1, 24-25.)  Blind and visually impaired persons who serve as representative payees face identical

26    problems as a result of SSA's communication in standard print.  Since they cannot read these notices

27    or fill in and return standard print form, representative payees fear making mistakes that will lead to

28    disruption, suspension or reduction in the benefits of a beneficiary to whom they owe a fiduciary

obligation and who is often a close family member.  (SAC ¶¶ 101, 103, 108-09.)  Plaintiffs have repeatedly requested receipt of individual notices and general benefits information in alternative formats that are accessible to visually impaired persons, such as Braille, large print, electronic mail, computer disk, and audiotape recording.  (SAC ¶¶ 25, 35, 50, 57, 62, 69, 80, 85, 92, 98, 103, 109.)  SSA has refused or ignored these requests despite its obligations under Section 504 of the Rehabilitation Act of 1973 and its obligation under applicable federal regulations to effectively communicate with its applicants, beneficiaries, recipients and representative payees.  (SAC ¶¶ 2, 25, 35, 50, 57, 62, 69, 80, 85, 92, 98, 103, 109.)  As a result, individual Plaintiffs and proposed class members have undergone great personal anxiety and borne the risks and burdens of:  a) receiving notices they cannot read, b) divulging private information (including Social Security Numbers) to sighted third parties in order to comprehend said notices, c) finding and paying for reliable readers and transcribers, d) losing independence and being unable to perform their duties as representative payees, and/or e) experiencing financial hardship arising from having benefits reduced or suspended when they received no effective prior notice and could not appeal in a timely manner to safeguard benefits or otherwise respond in a timely fashion to program requirements sent in ineffective communication formats.  (SAC ¶¶ 1, 26, 38-41, 51-54, 58-59, 64-66, 74-78, 79-82, 87, 92-95, 101-5, 107-10, 121.)

As discussed below, the individual Plaintiffs satisfy all requirements of Rule 23(a) and the requirements of Rule 23(b)(2).  The circumstances in this case, where Defendants' challenged conduct is broadly directed at all class members and plaintiffs seek broad injunctive redress of SSA's refusal to provide needed alternate communication formats under federal civil rights law, exemplifies the kind of action suitable for the class action vehicle.  The named Plaintiffs therefore request that a plaintiff class as defined herein be certified.

**II.     STATEMENT OF THE ISSUE TO BE DECIDED**

This Motion presents the following issue for decision by this Court:

**Issue:**  Should a plaintiff class as defined below be certified under Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure?

1      Individuals with visual impairments that substantially limit the major life activity of seeing who

2  require that materials be in an accessible format in order to participate in programs and activities

3  implemented by the SSA as applicants, beneficiaries, recipients and representative payees.

4  **III.**     **STATEMENT OF THE RELEVANT FACTS**

5      The members of the proposed class are individuals with visual disabilities who apply for,

6  receive, or administer as representative payee on behalf of another, benefits through the Old-Age,

7  Survivors, and Disability Insurance ("OASDI") program on the basis of earnings history;  the

8  Supplemental Security Income ("SSI") program on the basis of financial need and either age,

9  blindness, or other disabilities; the Special Veterans benefits (SVB) program on the basis of financial

10  need, age,  World War II veteran status, and residence outside the United States; or the Medicare Part

11  D Low Income Subsidy.  (SAC ¶¶ 1, 6-15, 79, 84.)  SSA administers and supervises all SSA benefits

12  programs nationwide, including SSI, OASDI, and Special Veterans Benefits under Title VIII of the

13  Social Security Act, and also takes applications, makes eligibility determinations, processes appeals,

14  and redetermines subsidy eligibility for the Low Income Subsidy under the Medicare Part D

15  prescription drug benefit in addition to taking applications for Medicare Part A.  (SAC ¶¶ 16-18.)

16  POMS HI 03001.015.  Request for Judicial Notice filed July 8, 2008 ("RJN"), Ex. A.  Plaintiffs are

17  informed and believe that the proposed class consists of approximately three million persons, the

18  majority of whom do not receive benefits on the basis of blindness.  (SAC ¶ 20.)  SSA also appears to

19  accept that the size of the class is large.  (*See* April 10, 2008 Motion to Dismiss for Failure to State a

20  Claim at 24:5-8.)

21      Each of the individual Plaintiffs and proposed class members has a visual impairment that

22  substantially limits the major life activity of seeing, and is therefore an "individual with a disability"

23  under Section 504.  As such, all Plaintiffs are entitled to auxiliary aids and services that provide them

24  equal access to the programs for which SSA has responsibility.  (SAC ¶¶ 117-118.)  SSA is subject to

25  Section 504 and regulations promulgated by the United States Department of Health and Human

26  Services ("HHS") under Section 504.  (March 6, 2008 "Notice of Motion and Motion to Dismiss for

27  Failure to State a Claim at n.12 and text accompanying.)  Those regulations direct SSA to "take

28  appropriate steps to ensure effective communication" and "furnish appropriate auxiliary aids where

1   necessary to afford an individual with handicaps an equal opportunity to participate in" the agency's

2   programs.  *See* 45 C.F.R. § 85.51 (2006).  The regulations further state that auxiliary aids "useful for

3   persons with impaired vision include readers, Brailled materials, audio recordings, and other similar

4   services and devices," and require SSA to "give primary consideration to the requests of the individual

5   with handicaps" when determining the type of auxiliary aid it must provide.  (SAC ¶¶ 119-120.)

6        Technological advances since HHS promulgated its Section 504 regulations twenty years ago

7   have greatly enhanced the availability and feasibility of auxiliary aids, including those listed in the

8   governing Section 504 regulations.[2]  These new technologies would enable SSA to communicate

9   effectively with the proposed class members.  Throughout the country, the United States Department

10  of Justice ("DOJ") has required various government entities to abide by the effective communication

11  mandate of the Americans with Disabilities Act and provide alternate communication formats so that

12  visually impaired members of the public can participate in government programs.[3]  Moreover many

13  large private business entities are voluntarily providing visually impaired customers with accessible

14  communication formats such as Braille and large print.[4]

15       In contrast to the above examples, SSA regularly sends standard print notices to proposed class

16  members containing complex information about individual benefits.  These notices typically contain

17  calculations of awards and alleged overpayments, and vital information about reductions, suspensions

18

19  ────────────────────

20  [2] Jennifer Sutton, *A Guide to Making Documents Accessible to People Who Are Blind or Visually
    Impaired* (2002), *available at http://www.acb.org/accessible-formats.html* (last visited July 22, 2008).

21  RJN, Ex. N.

    [3] *See, e.g., Settlement Agreement Between the United States of America and the City of Burton, MI,
22  Under the Americans with Disabilities Act, DJ-204-37-295*, par.10, *available at
    http://www.usdoj.gov/crt/foia/mi_1.htm* (last visited July 22, 2008).  RJN, Ex. O.  *See also Alphabetic
23  Index to ADA Settlement Agreements, available at http://www.usdoj.gov/crt/foia/adaalph.htm* (last
    visited July 22, 2008).  RJN, Ex. P.  The communication regulations under Section 504 and Title II of
24  the ADA have virtually identical requirements and defenses.  *See* 45 C.F.R. § 85.51 and 28 C.F.R. §
    35.160-164.

25  [4] *See, e.g., Sample Accessible Credit Reports Agreement Between the American Council of the Blind
    (ACB), California Council of the Blind (CCB) and Equifax, Experian and TransUnion, available at
26  http://lflegal.com/2008/04/credit-report-agreement* (last visited July 22, 2008).  RJN, Ex. Q.  *See also*
    Lainey Feingold, *Information Access in the Financial Industry, Talking ATMs, Accessible Formats,
27  and Web Accessibility, Neighborhood Legal Services, Inc., available at
    http://www.nls.org/conf2004/information_access.htm* (last visited July 22, 2008).  RJN, Ex. R.

28

and terminations of benefits, denials, printed forms to complete, lists of documents and records that the

recipient must produce, appointments to meet with SSA representatives, requests for re-certification of

eligibility, deadlines for response, and appeal rights.  Such information is difficult to comprehend,

analyze and recall if the information is only read aloud a single time or even numerous times.  Despite

repeated requests and complaints from individual Plaintiffs and proposed class members, SSA refuses

to provide individual notices in formats such as Braille, large print, electronic mail, and audiotape

recording that that are immediately, repeatedly, and privately accessible to program participants with

visual impairments.  (SAC ¶¶ 24-26, 31.)

   SSA's failure to comply with its Section 504 obligations leaves individual Plaintiffs and

proposed class members in the difficult and stressful position of trying to apply for and maintain

benefits that may be the sole source of income for themselves or the beneficiaries for whom they serve

as representative payees while having unequal access to essential information needed to maintain those

benefits.  (SAC ¶¶ 26-28.)  Visually impaired SSA program participants may miss a standard print

notice because they cannot see it, and may not have access to regular or reliable sighted assistance to

inform them of the fact SSA has sent a notice or the contents of that notice.  A written notice of

suspension or reduction of SSI benefits gives the recipient only ten days to file an appeal in order to

continue receiving SSI benefits in the interim period pending determination of the appeal.  (SAC ¶ 26,

108.)  Individual Plaintiffs and proposed class members may not be apprised of a suspension or

reduction in benefits until the entire ten days have passed, and may only discover the suspension or

reduction because of an unexplained lack of funds in the bank accounts[5] which were to receive

automatic deposits of SSA benefits.  (SAC ¶¶ 38-40, 74.)  Similarly, SSA's conduct in failing to

inform or train its staff about the SSA Braille Services Team and the availability of SSA program

publications in accessible formats deprives visually impaired program participants of equal access to

---

[5] While a representative payee is generally required to maintain benefits received on behalf of a beneficiary separate from his or her own funds, this requirement is waived if the representative payee is the beneficiary's spouse or natural or adoptive parent or stepparent and they live in the same household.  *See* 20 C.F.R. § 416.635 (b) (2006).

1    essential program information needed to maintain benefits and understand Defendants' determinations.

2    (SAC ¶¶ 28, 82, 85-86.)

3        SSA provides instruction on agency policy to its personnel through an operations manual called

4    the Program Operations Manual System ("POMS").  There is no POMS provision which purports to

5    implement SSA's 504 responsibilities.  The only relevant POMS provisions implement the Social

6    Security Act.  POMS NL 00603.030 lists two exclusive "options" for blind persons who receive

7    benefits on the basis of blindness and request an accessible communication format: a "supplemental

8    notification by telephone . . . within 5 work days after the date of the notice"; or a standard print notice

9    sent by certified U.S. mail.  (SAC ¶ 30.)  RJN, Ex. C.  Neither option, alone, provides effective

10   communication to individual plaintiffs or the proposed class.  The notice option on its face applies only

11   to a minority of the proposed class: those who receive benefits on the basis of blindness.

12        Recently, after the filing of this case and this Court's April 23, 2008 "Order: (1) Denying

13   Motions to Dismiss in Part and (2) Requesting Further Briefing," SSA issued Policy Instruction EM -

14   08066 on June 30, 2008 announcing that the "supplemental notification" options will be available to all

15   Title II and Title XVI beneficiaries and recipients with a visual impairment who request them.  EM -

16   08066.  RJN, Ex. D.  However, the instructions are silent on notifying individuals of their right to

17   make such a request.  In addition, the instructions indicate that if a visually impaired representative

18   payee lives at the same address as the beneficiary or recipient who they serve, the notice options can be

19   requested on the beneficiary or recipient's behalf so that the representative payee can "have the benefit

20   of it"; the option will not be made available to representative payees who do not live at the same

21   address as the beneficiary or recipient.[6]  Finally, part C of EM -08066 details the procedure that SSA

22   representatives are to follow when entering a request for a special notice and makes it very clear that

23

24   ───────────────

      [6] This is so despite the fact that representative payees are under a fiduciary obligation to "[u]se the

25   benefits received on [the beneficiary's] behalf only for [the beneficiary's] use and benefit in a manner

      and for the purposes he or she determines under the guidelines in this subpart, to be in [the

26   beneficiary's] best interests."  20 C.F.R. § 416.635 (a).  Moreover, for beneficiaries who are under age

      18, SSA has established a clear preference for the "natural or adoptive parent" of the beneficiary who

27   has custody, is contributing toward the beneficiary's support, or who demonstrates strong concern for

      the beneficiary's well-being, even before a relative or stepparent who has custody.  20 C.F.R. §

28   416.621(c).

1   Braille is not available and "[i]f an individual selects "Braille" a regular notice will  be sent with no

2   telephone call."  The POMS applicable to the Medicare Part D Prescription Drug Subsidy do not

3   appear to incorporate any kind of notice options for visually impaired Low Income Subsidy applicants.

4   POMS HI 03010.001.  RJN, Ex. B.  Further, the option itself applies only to those notices that pertain

5   to "any decision, determination or proposed action" that affect benefits, leaving out such notices as

6   requests for information or action regarding re-determinations of eligibility.  Any information

7   pamphlet accompanying the notice is explicitly excluded from the telephone option according to

8   POMS NL 00603.035.  (SAC ¶¶ 30, 33.)  RJN, § B.8 of Ex. E.

9         The availability of notice options is rarely communicated, and its requirements are

10  inconsistently performed even when specifically requested.  (SAC ¶ 31.)  Moreover, a telephone call

11  does not allow for accurate retention or review of complex benefits information.  Certified mail

12  provides no greater assurance of actual notice even if it is signed for by the recipient, and often

13  requires blind persons to deal with time consuming physical and procedural barriers to go to the post

14  office if they miss delivery and sign for a standard print letter that they still cannot read.  (SAC ¶¶ 31,

15  32.)  Even though SSA's notice options do not provide effective communication, the POMS directs

16  SSA representatives to "not cancel a proposed action solely because the advance notice was not read to

17  the claimant/beneficiary," as "the due process requirement is met because a notice of proposed action

18  was mailed to the claimant."  POMS NL 00603.040, 00603.045, 00603.050.  RJN, Exs.  F, G, H.

19  Similarly the POMS directs SSA field office representatives to "not delay the action proposed by the

20  notice" if i) "telephone contact cannot be made within 5 workdays" with an individual applying for or

21  receiving SSI benefits on the basis of blindness, and ii) the individual fails to respond within 5

22  workdays after the field office sends an additional certified letter asking the individual to call the field

23  office.  POMS NL 00801.030.  RJN, ¶ C.6 of Ex. I.

24  **IV.    ARGUMENT**

25        When evaluating a motion for class certification brought under Rule 23 of the Federal Rules of

26  Civil Procedure, the Court must take all factual allegations in the Complaint as true.  *Blackie v.*

27  *Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975); *Burkhalter Travel Agency v. MacFarms Intern., Inc*.,

28  141 F.R.D. 144, 152 (N.D. Cal. 1991); *see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974).

1    When class certification is sought under Rule 23(b)(2), class requirements have traditionally been

2    relaxed because "the conduct complained of is the benchmark for determining whether a subdivision

3    (b)(2) class exists, making it uniquely suited to civil rights actions in which the members of the class

4    are often 'incapable of specific enumeration.'"  *Joyce v. City and County of San Francisco*, No. C-93-

5    4149, 1994 WL 443464 *4 (N.D. Cal. Aug. 4, 1994) (citing *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st

6    Cir. 1972) (citation omitted)).  Moreover, civil rights cases alleging discriminatory policies or practices

7    are "by definition" class actions, provided the named and class plaintiffs share a common question of

8    law or fact and injury.  *General Telephone Co. v. Falcon*, 457 U.S. 147, 157 (1982).

9         Several district courts over the last several years have certified civil rights class actions where

10   plaintiffs alleged a violation of the anti-discrimination provisions of the ADA and Section 504.  *See,*

11   *Bates v. United Parcel Service*, 465 F.3d 1069 (9th Cir. 2006) (Class of employees and applicants for

12   package-car driver positions who were unable to pass the department of Transportation hearing

13   standard sued employer for alleged violation of the ADA, California Fair Employment and Housing

14   Act (FEHA), and the Unruh Civil Rights Act. Judgment entered in favor of plaintiffs, injunctive relief

15   granted, and employer's motion to decertify class denied.); *Lovely H. v. Eggleston*, 235 F.R.D. 248,

16   263 (S.D.N.Y. 2006) (welfare recipients with disabilities seeking declaratory and injunctive relief

17   under Title II of the ADA, Section 504,certified with respect to proposed class and subclass); *Fields v.*

18   *Maram*, No. 04 C 0174 2004 WL 1879997 (N.D. Ill. Aug. 17, 2004) (Class certification granted to all

19   persons with disabilities who are or will be recipients of Illinois' Medicaid program, who reside in

20   Medicaid-funded nursing homes and for whom motorized wheelchairs are medically  necessary, but

21   who have not been provided with such equipment); *Raymond v. Rowland*, 220 F.R.D. 173, 180

22   (D.Conn. 2004) (Class certification granted to all of state's disabled welfare recipients, alleging that

23   the state department of social services [DSS] failed to adopt and codify policies and procedures to

24   accommodate disabled persons in accessing and maintaining eligibility for benefits, programs, and

25   services offered by DSS.); *Chambers et al. v. City and County of San Francisco*, No. C06-06346 WHA

26   (N.D. Cal. July 12, 2007) (class certification of nursing home residents, and certain others eligible for

27

28

1  and at risk of becoming residents, who sought declaratory and injunctive relief under Section 504 and

2  the ADA's integration mandate.).[7]

3        **A.    The Individual Plaintiffs Meet the Standards for Certification Under Rule 23(a).**

4       Rule 23(a) of the Federal Rules of Civil Procedure allows an action to be maintained as a class

5  action provided that it meets four prerequisites: "(1) the class is so numerous that joinder is

6  impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of

7  the representative parties are typical of the claims or defenses of the class, and (4) the representative

8  parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a). *See Dukes v.*

9  *Wal-Mart, Inc.,* 508 F.3d 1168, 1176 (9th Cir. 2007); *Lancaster v. Tilton,* No. C 79-01630-WHA, 2006

10  WL 2850015, at *7 (N.D. Cal. Oct. 4, 2006). As shown below, the proposed class here easily satisfies

11  all of the requirements of 23(a).

12        **1.    The Size of the Class, Along with Other Factors, Makes Joinder of All Class Members Impracticable.**

13

14       A class action may be maintained only if "the class is so numerous that the joinder of all parties

15  is impracticable." FED. R. CIV. P. 23(a)(1). Impracticability addresses the expense and burden, to the

16  parties and the court, of litigating each claim individually, rendering the case difficult or inconvenient

17  without joining all members of the class. *Harris v. Palm Springs Alpine Estates*, 329 F.2d 909, 913-14

18  (9th Cir. 1964). Courts have often found the numerosity requirement satisfied by the sheer number of

19  class members. *See, e.g., Lancaster,* 2006 U.S. Dist. LEXIS 75121, at *20-21 (finding numerosity in a

20  class of over 600 prisoners housed at San Quentin); *Wyatt v. Poundstone*, 169 F.R.D. 155, 164 (M.D.

21  Ala. 1995) (upholding class of 1,000 persons with retardation in state facilities). The fact that the exact

22  size of the class cannot be easily ascertained does not preclude class certification. *Lynch v. Rank*, 604

23  F. Supp. 30, 36 (N.D. Cal. 1984), *aff'd*, 747 F.2d 528 (9th Cir. 1984). A court may find the numerosity

24  requirement has been met where the exact size of the class is unknown but general knowledge and

25  common sense indicate that it is large. *Cruz v. Bowen,* 672 F.Supp. 1300, 1304 (N.D. Cal. 1987).

26

27  [7] The court's July 12, 2007 "Order Granting Motion for Class Certification" is available through the Federal Judiciary's Public Access to Court Electronic Records (PACER) service center online at

28  http://pacer.psc.uscourts.gov/.

In this case, there is no question that joinder is impracticable.  The proposed class is large, numbering in the millions.  (SAC ¶ 20.)  Defendants' own statistics state that in December 2006, there were 110,094 persons receiving Title II OASDI benefits on the basis of blindness, and 66,994 persons receiving Title XVI SSI benefits on the basis of blindness.[8]  SSA's chartbooks also indicate that in 2005, 88-89% of persons aged 65 or older received Social Security benefits, with those benefits comprising at least 50% of total income for 54% of aged beneficiary couples and 72% of aged non-married beneficiaries.[9]  Visual impairment and blindness have increasing prevalence among the aging population in general, and this would hold true for those millions of people 65 and older who receive SSA benefits on the basis of age.[10]  These figures do not even include those individuals receiving OASDI or SSI on another basis, such as another disability, who are also visually impaired and require alternate formats for effective communication with SSA.

Apart from the sheer number of affected individuals—numbering in the millions - joinder is not considered feasible when "members of the class, who are by definition disabled and often poor, do not have the economic means to pursue remedies on an individual basis."  *Lynch*, 604 F. Supp. at 36.  In

---

[8] Table 12 of "Number receiving Social Security disability benefits because of blindness or deafness, by state or other area, December 2006" from *All Disabled Beneficiaries in Current Payment Status, Annual Statistical Report on the Social Security Disability Insurance Program* (Dec. 2006), *available at http://www.ssa.gov/policy/docs/statcomps/di_asr/2006/sect01.html#table12* (last visited July 22, 2008), and Table 7.E3 "Number and percentage distribution of recipients of federally administered payments, by sex, age, and eligibility category, December 2006" from the US Social Security Administration's *Annual Statistical Supplement, 2007, Supplemental Security Income, Recipient Characteristics* (Dec. 2006), *available at* http://www.ssa.gov/policy/docs/statcomps/supplement/2007/7e.html#table7.e3 (last visited July 22, 2008).  RJN, Exs. J, K.

[9] Chart on "Income of the Aged Population, Relative Importance of Social Security, 2005" from the U.S. Social Security Administration's *Fast Facts and Figures about Social Security 2007,  available at* http://www.ssa.gov/policy/docs/chartbooks/fast_facts/2007/fast_facts07.html#agedpop (last visited July 22, 2008).  RJN, Ex. L.

[10] The National Eye Institute, one of the federal National Institutes of Health, reports that the prevalence of vision impairment among Americans aged 40-49 years is 0.3%, growing to 0.4% of those who are 50-59, 1.2% of those who are 60-69, 3.8% of those 70-79, and 23.7% of those over 80.  There are at least 782,000 people over age 70 that are blind, and over 2 million additional people over age 70 that are low vision (defined as having a best-corrected visual acuity of less than 6/12 (<20/40) in the better-seeing eye).  *See* table of "Prevalence of Blindness and Low Vision Among Adults 40 Years and Older in the United States" from *National Eye Institute Summary of Eye Disease Prevalence Data, available at http://www.nei.nih.gov/eyedata/pbd_tables.asp* (last visited July 22, 2008).  RJN, Ex. M.

this case, the proposed class as defined possesses this characteristic because it consists of persons with visual impairment disabilities who qualify for OASDI benefits on the basis of disability or age and earnings history, and/or who qualify for SSI payments on the basis of financial need and either age or disability.  (SAC ¶ 1).  The numerosity requirement of Rule 23(a)(1) is therefore satisfied in this case.

### 2.    There Are Questions of Law or Fact Common to All Members of the Class.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  FED. R. CIV. P. 23(a)(2).  This requirement "focuses on the relationship of common facts and legal issues among class members."  *Dukes,* 509 F.3d at 1177.  A class action is particularly appropriate when the issues involved are common to the class as a whole and when they "turn on questions of law applicable in the same manner to each member of the class."  *Falcon*, 457 U.S. at 155.  Rule 23(a)(2) does not require the named plaintiffs to be "identically situated with all other class members"; it is enough if their situations share a common issue of law or fact and are sufficiently parallel to ensure a vigorous and full presentation of all claims for relief.  *California Rural Legal Assistance v. Legal Services Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990) (citations omitted).  Plaintiffs need only present a single issue of law or fact common to all class members.  *Dukes,* 509 F.3d at 1177 (pointing out that the commonality requirement is qualitative rather than quantitative; "one significant issue common to the class may be sufficient to warrant certification").  Though courts have generally followed the structure of Rule 23 by first analyzing the prerequisites listed in Rule 23(a) before looking to the relevant subsection of Rule 23(b), "it has long been recognized that a showing of action taken against a class on grounds generally applicable thereto (here discrimination) will provide the common questions necessary to satisfy Rule 23(a)(2).  *Wofford v. Safeway Stores, Inc.*, 78 F.R.D. 460, 477 (D.C. Cal. 1978).

Even when the effect on each class member differs, a common allegation that a governmental defendant's general or systemic policy, procedure, or practice is discriminatory or illegal suffices to establish commonality of the claims.  *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) (citing *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993)); *Arnold v. UA Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal 1994) (commonality is "met by the alleged existence of common discriminatory practices.  The actions of the defendant need not affect each member of the class in the

1   same manner.") (citations omitted).  Put another way, "commonality is satisfied where [a] . . . lawsuit

2   challenges a system-wide practice or policy that affects all of the putative class members."  *Armstrong*

3   *v. Davis,* 275 F.3d 849, 868 (9th Cir. 2001); *accord Lancaster,* 2006 WL 2850015, at *7.  *See also*

4   *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (in class action involving foster children,

5   court held "[t]he unique circumstances of each child do not compromise the common question of

6   whether, as plaintiffs allege, defendants have failed to meet their federal and state law obligations.");

7   *Wyatt*, 169 F.R.D. at 165 (allegation that "defendants have not given them [plaintiffs] an informed

8   choice to live in the community" was common question of law sufficient to uphold class

9   determination).  The Ninth Circuit has observed that courts "have generally given [Rule 23(a)(2)] a

10  permissive application in a variety of substantive law areas so that the commonality requirement is

11  usually found to be satisfied."  *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1320 (9th Cir. 1982),

12  *vacated on other grounds*, 459 U.S. 810 (1982).

13          In this case, the overriding issue is Defendants' compliance with Section 504 and its

14  implementing regulations which require SSA to communicate effectively with blind and visually

15  impaired program participants to ensure they have an equal opportunity to participate in and enjoy the

16  benefits of SSA programs.  This action challenges SSA's ongoing policies and practices in failing to

17  notify program participants of their Section 504 rights, sending out only standard print notices to

18  program participants, and refusing to provide alternate formats such as Braille, large print, electronic

19  mail, computer disk, and audiotape recording.  (SAC ¶¶ 25, 35, 50, 57, 62, 69, 80, 85, 92, 98, 109.)

20  Every individual Plaintiff and proposed class member has been adversely affected by these policies

21  and practices.

22          There are several questions of law and fact common to the members of the proposed class:  (1)

23  Whether SSA's refusal to offer or provide standard print communications  in alternative formats

24  deprives visually impaired program applicants, recipients, beneficiaries, and representative payees of

25  an equal opportunity to participate in programs and activities implemented by SSA; (2) whether

26  Defendants' policy of providing the "notice option" of a telephone call or certified mail for program

27  participants with visual disabilities and for certain notices fulfills SSA's obligation to provide auxiliary

28  aids and implement Section 504 regulations concerning the provision of effective communication to

1  visually impaired program participants; (3) whether SSA in fact executes its current notice options or

2  consistently provides effective communication to visually impaired program participants.  The rights

3  of the putative plaintiff class flow from SSA's obligations under federal anti-discrimination law and

4  regulations.  Because the issue of Defendants' compliance with Section 504 is common to all class

5  members, the commonality requirement has been satisfied.

6        Visually impaired SSA program recipients such as the named Plaintiffs are all adversely

7  affected by SSA's discriminatory refusal to provide effective communication.  As a result of SSA's

8  uniform conduct, all Plaintiffs experience anxiety when they receive critical communications that they

9  cannot read for themselves, and all Plaintiffs experience the risk of revealing private family financial

10 information, including Social Security Numbers.  The individual Plaintiffs do not seek a change in

11 SSA's standards with regard to how eligibility for benefits is determined, how benefit amounts are set,

12 how benefit claims are disputed or resolved, or when and how representative payees are appointed.

13 Rather, the class as a whole seeks relief that will compel SSA to adopt practices and procedures to

14 ensure that benefit notices and information are effectively communicated to visually impaired program

15 participants and visually impaired representative payees charged to act on their behalf  in accordance

16 with Section 504 and their Due Process rights.  (April 23, 2008 Order at 8:10-14.)

17        **3.    The Named Plaintiffs' Claims Are Typical of the Claims of the Class.**

18        Rule 23(a)(3) requires that the claims of the class representatives be typical of the class claims.

19 FED. R. CIV. P. 23(a)(3); *Jordan*, 669 F. 2d at 1321.  "A class representative must be part of the class

20 and possess the same interest and suffer the same injury as the class members."  *Falcon*, 457 U.S. at

21 156 (citations omitted).  The primary purpose of the typicality requirement is to ensure that the nature

22 of the claims brought by the class representative are so interrelated that the interests of the class

23 members will be fairly and adequately protected in their absence.  *Id*. at 157.  In other words, the

24 interests of the class representatives must align with the interests of the class.  *Lancaster*, 2006 WL

25 2850015, at *8 (citing *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992)).

26        Like commonality, typicality does not require that each class member share the same factual

27 situation. The Supreme Court has recognized that "the commonality and typicality requirements of

28 Rule 23(a) tend to merge…."  *Falcon,* 457 U.S. at 158 n.13.  "[A] named plaintiff's claim is typical if

1    it stems from the same event, practice or course of conduct that forms the basis of the class claims and

2    is based upon the same legal or remedial theory." *Id.  See also Schwartz v. Harp*, 108 F.R.D. 279, 282

3    (C.D. Cal. 1985).  In such a situation, "varying factual differences between the claims or defenses of

4    the class and the class representative will not render the named representative's claim atypical."

5    *Jordan*, 669 F.2d at 1321.  The fact that the class representatives' claims may reveal different degrees

6    of difficulty in achieving the access sought will not in itself defeat the typicality requirement since

7    "[i]n most cases involving access under the ADA, there will be individual variations among class

8    members in terms of the nature of their disability, the types of aides used, and the individual nature of

9    each class member's encounters with the website and access to services and facilities." *National*

10   *Federation of the Blind v. Target Corporation*, No. C 06-1802 2007 WL 2846462 *15 (N.D. Cal. Oct.

11   2, 2007).  "The test for typicality, like the test for commonality, is not demanding." *Lightbourn v.*

12   *County of El Paso*, 118 F.3d 421, 425 (5th Cir. 1997).

13          Here, the claims of the named Plaintiffs closely mirror those of the class as a whole.  Each of

14   the named Plaintiffs is visually impaired and cannot read standard print format.  The named Plaintiffs

15   have not been informed of their rights under Section 504, their requests for alternative formats to

16   accommodate their visual disabilities have been refused or ignored, and each continues to receive

17   standard print notices from SSA.  Named Plaintiffs Tammy Renee Cooper and Billie Jean Keith have

18   sought alternative formats through every administrative route provided by SSA and established that it

19   would be futile to require exhaustion of even the remaining named Plaintiffs since "[t]he agency has

20   already denied the discrimination claims of plaintiffs Cooper and Keith and has them on perpetual hold

21   on 'administrative appeal.'"  (May 13, 2008 Order Re Proper Course of Future Proceedings, 2:16-18.)

22          The individual Plaintiffs, like the proposed class as a whole, charge Defendants with violations

23   of federal and constitutional law due to its policies and practices which result in their not being

24   provided with effective communication that would ensure that they have an equal opportunity to

25   participate in and either enjoy the benefits under the SSA programs or meet their fiduciary

26   responsibilities as representative payees.  20 C.F.R. § 416.635 (a)(2006).  These claims typify the

27   claims of the class and they seek the same relief as well.  (*See* SAC ¶¶ 21-22 24-33,120-123, 125-127,

28   128-130.)

1    Regardless of any individual differences among class members, each has endured the same

2    discriminatory course of conduct from Defendants.  The claims of the individual Plaintiffs are typical

3    of all unnamed class members who are visually impaired SSA program applicants, recipients,

4    beneficiaries, or representative payees since SSA's policy and practice is to send notices only in

5    standard print format and to refuse such effective communication aids as Braille, large print, electronic

6    mail, and audiotape recording.  Hence, the requirements of Rule 23(a)(3) are met.

7    **4.    The Named Plaintiffs and Their Attorneys Will Fairly And Adequately Protect the Interests of the Class.**

8

9    The final requirement of Rule 23(a) is that the representative parties must "fairly and

10   adequately protect the interests of the class."  FED. R. CIV. P. 23(a)(4).  The adequacy of representation

11   requirement is two-fold: (1) the proposed class representatives must not have conflicts of interest with

12   the proposed class, and (2) they must have qualified and competent counsel.  *Dukes*, 474 F.3d at 1233.

13   Because the individual Plaintiffs have no interests that conflict with or are antagonistic to those of the

14   class, and their counsel are qualified, Plaintiffs meet this requirement as well.

15   **a.    The Individual Plaintiffs' Interests are Not Antagonistic to Those of the Class.**

16   The class representatives do not have any interests that are antagonistic to the interests of the

17   class.  This inquiry includes examination of whether there is antagonism between the representatives

18   and class members, a sharing of interests between the representatives and class members, and the

19   unlikelihood that the suit is collusive.  *In re Northern Dist. of Cal. Dalkon Shield IUD Prods. Liab.*

20   *Litig.*, 693 F.2d 847, 855 (9th Cir. 1982).  *Accord Lancaster,* 2006 WL 2850015, at *9.

21   Here, as discussed above, the individual Plaintiffs' claims and their injuries are typical of those

22   of the proposed class members.  None of the named Plaintiffs seeks personal damages or other

23   individualized relief to the exclusion of other class members.  To the contrary, the focus of this

24   litigation is the grant of broad injunctive relief that will benefit the entire class.  Collusion is absent.

25   No conflicts exist which could hinder the individual Plaintiffs' ability to pursue the litigation

26   vigorously on behalf of the class.  They will fairly and adequately protect the interests of the class.

27

28

1          **b.      Plaintiffs' Counsel Are Qualified to Litigate This Action.**

2          Rule 23(a)(4) also requires that the proposed class representatives be able to prosecute the

3   action vigorously through qualified counsel. *In re MDC Holdings Securities Litig.*, 754 F. Supp 785,

4   802 (S.D. Cal. 1990). It has been recognized that public interest attorneys with experience in

5   protecting the interests of the poor adequately represent class interests. *See, e.g., Lopez v. Heckler*, 572

6   F. Supp. 26, 31 (C.D. Cal. 1983), *modified on other grounds*, 725 F.2d 1489 (9th Cir.), *vacated and*

7   *remanded on other grounds*, 469 U.S. 1082 (1984); *Serritella v. Engleman*, 339 F. Supp. 738, 748

8   (D.N.J.), *aff'd*, 462 F.2d 601 (3d Cir. 1972).

9          Plaintiffs' attorneys in this matter are counsel with established public interest organizations and

10  a private law firm, all with extensive experience in litigation of federal class actions involving

11  disability and health programs.

12         Disability Rights Education and Defense Fund (DREDF) is a nationally recognized non-profit

13  civil rights law and policy center dedicated to advancing the civil rights of people with disabilities, and

14  specializing in high impact litigation on behalf of people with disabilities and parents of children with

15  disabilities. (Declaration of Arlene Mayerson ¶ 4.) Arlene Mayerson, Directing Attorney with

16  DREDF and one of Plaintiffs' counsel on this case, has practiced disability rights law for the last 29

17  years and has been intimately involved in the development of the ADA and other federal statutes

18  protecting the civil rights of people with disabilities. (*Id.* ¶¶ 3, 6 .) Ms. Mayerson has also lectured

19  and written extensively on the subject of disability rights. (*Id.* ¶ 8.) DREDF has served as class

20  counsel in numerous cases under the ADA and IDEA and has co-counseled and authored *amicus*

21  *curiae* briefs on behalf of members of Congress, former Attorney General Thornburgh and the

22  disability community on disability rights cases before the United States Supreme Court. (*Id.* ¶ 5.)

23         Heller Ehrman LLP is an international law firm with over 600 attorneys working in 14 offices

24  worldwide. (Declaration of Wondie Russell ¶ 2.) Representing both plaintiffs and defendants, Heller

25  Ehrman has served as lead counsel in numerous class action cases, including significant experience

26  representing class action plaintiffs. (*Id.* ¶ 3.) Heller Ehrman also has a highly successful, nationally

27  ranked *pro bono publico* practice. (*Id.* ¶ 4.) Wondie Russell has handled several *pro bono* cases,

28

including class actions, of national significance, and the Heller Ehrman team working on this case include other attorneys with experience in class actions and *pro bono* matters .  (*Id.* ¶¶ 5-9.)

The National Senior Citizens Law Center (NSCLC) is a national legal advocacy organization, founded in 1972, that works to promote the independence and well-being of low-income elderly and disabled Americans, especially women, people of color, and other disadvantaged minorities. (Declaration of Gerald McIntyre ¶ 3.)  NSCLC works to preserve access to the federal courts for vindication of statutory rights and advocates for better enforcement of consumer legal rights in safety net programs.  NSCLC attorneys have served as class counsel in numerous class action lawsuits throughout the nation in the areas of Medicaid, Medicare, Social Security, SSI, age discrimination in employment, long term care and disability rights.  (*Id.*)  Gerald A. McIntyre has been an attorney at NSCLC since 1993 and has been engaged in public interest class action litigation for the past 37 years. His experiences include both Social Security and disability rights litigation.  He has also testified before Congress on Social Security issues and has presented on Social Security issues at numerous Continuing Legal Education programs across the country.  (*Id.* ¶¶ 4-5.)

In summary, the individual Plaintiffs satisfy the adequacy of representation requirement under Rule 23(a)(4) both with respect to their interests and their choice of counsel.

**B.     This Case Satisfies Rule 23(b)(2) Because Defendants Have Acted on Grounds Generally Applicable to the Class Making Final Injunctive and Declaratory Relief Appropriate.**

In addition to the four requirements of Rule 23(a), the individual Plaintiffs also must satisfy the requirement contained in one of the subdivisions of Rule 23(b).  FED. R. CIV. P. 23(b).  Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . ."  In interpreting this requirement, courts have held that where the primary purpose in bringing the action is to seek injunctive relief, the action is properly certifiable under Rule 23(b)(2*). Elliott v. Weinberger*, 564 F.2d 1219, 1228 n.12 (9th Cir. 1977); *Stolz v. United Bd. of Carpenters and Joiners of Am.*, 620 F. Supp. 396, 407 (D. Nev. 1985).  Civil rights cases against parties charged with class-based discrimination are "prime examples" of actions under Rule 23(b)(2). *Amchem Products v. Windsor*, 521 U.S. 591, 614 (1997).  For example, the Ninth Circuit has held that

1  class determination under Rule 23(b)(2) is appropriate when "class members complain of a pattern or

2  practice that is generally applicable to the class as a whole…[e]ven if some class members have not

3  been injured by the challenged practice…" *Walters*, 145 F.3d at 1046.  Additionally, the individual

4  circumstances of each class member do not defeat class determination when the challenged policies are

5  systemic and declaratory and injunctive relief is sought.  *Marisol A*., 126 F.3d at 377.

6       This case is typical of Rule 23(b)(2) class actions because Defendants' policies and practices

7  affect all members of the class as well as the individual plaintiffs.  Defendants' violations of federal

8  law have application to all class members as current applicants, beneficiaries, recipients, and

9  representative payees of SSA programs with visual impairments that substantially limit the major life

10 activity of seeing.  The proposed class seeks relief that will compel Defendants to comply with their

11 own communication regulation by ensuring that policies, practices, and procedures are adopted that

12 will enable all class members to receive in accessible formats the information that SSA provides to

13 participants.  As stated above, such injunctive relief would give class members an equal opportunity to

14 participate in programs and activities implemented by SSA. The ongoing communication needs of the

15 proposed class also require the injunctive relief requested by the named Plaintiffs to be implemented

16 on a class-wide basis.  Since the individual Plaintiffs seek only declaratory and injunctive relief, and

17 the granting of such relief is appropriate with respect to the class as a whole to remedy Defendants'

18 discriminatory actions, Rule 23(b)(2) is satisfied in this case.

19       **C.     Notice to Absent Class Members Is Not Required in a Rule 23(b)(2) Case Where
             the Claims Seek Only Declaratory or Injunctive Relief.**

20

21       When a class is certified under Rule 23(b)(2), absent class members are not required to receive

     notice or to have the opportunity to opt out of the lawsuit.  *EEOC v. Gen. Telephone Co.*, 599 F.2d
22
     322, 334 (9th Cir. 1979), *aff'd,* 446 U.S. 318 (1980).  Instead, for a Rule 23(b)(2) class, the court has
23
     discretion to decide whether to order notice under Rule 23(c)(2).  *Molski v. Gleich,* 318 F.3d 937, 952
24
     (9th Cir. 2003).
25
          The purpose of the notice provisions is to protect absent class members.  2 Newberg on Class
26
     Actions § 8.05 (1995).  Due process requires notice to absent class members only when it is necessary
27
     to provide class members an opportunity to signify whether representation by named plaintiffs is fair
28

1  and adequate or to otherwise intervene. *Elliott*, 564 F.2d at 1229.  In Rule 23(b)(2) actions for

2  equitable relief, however, "the due process rights of absent class members generally are satisfied by

3  adequate representation alone." *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994) (citation

4  omitted).  For example, in public benefits actions involving claims for declaratory and injunctive relief,

5  once underlying liability has been determined, it is then well within the district court's discretion

6  simply to direct the offending governmental agency to notify absent class members of their rights

7  under the class judgment in their favor. *Beltran v. Myers*, 701 F.2d 91, 94 (9th Cir. 1983), *cert. denied*

8  *sub nom. Rank v. Beltran*, 462 U.S. 1134 (1983).

9       This case involves only claims for declaratory and injunctive relief.  It would be difficult to

10  envision a class member who would not benefit from, and desire, materials and information from SSA

11  in accessible formats.  Accordingly, there is no need to provide absent class members with notice and

12  the opportunity to opt out. *General Telephone*, 599 F.2d at 334.  In view of that, individual Plaintiffs

13  request that the Court not require notice to unnamed plaintiff class members of the pendency of this

14  action prior to judgment, but rather determine the need for notice once underlying liability against the

15  Defendants is decided.

16  **V.      CONCLUSION**

17       For the reasons stated above, the individual Plaintiffs have satisfied all of the requirements of

18  Rule 23(a) and Rule 23(b)(2) with respect to the proposed defined class.  Plaintiffs respectfully request

19  that this case be certified as a Rule 23(b)(2) class action and that they not be required to give notice to

20  absent class members.

21  DATED: July 24, 2008                          Respectfully submitted,
                                                  DISABILITY RIGHTS EDUCATION AND
22                                                DEFENSE FUND, INC.

23                                                By _/s/  Arlene B. Mayerson_____
24                                                Attorney For Plaintiffs

25

26  *Additional Co-Counsel for Plaintiffs:*
    GERALD A. MCINTYRE (Bar No. 181746)
27  NATIONAL SENIOR CITIZENS LAW CENTER
    3435 Wilshire Boulevard, Suite 2860
28  Los Angeles, CA 90010

Telephone: +1.213.639.0930
Facsimile: +1.213.639.0934
gmcintyre@nsclc.org

KATHLEEN L. WILDE (Oregon Bar No. 97105) (Admitted Pro Hac Vice)
OREGON ADVOCACY CENTER
620 SW Fifth Avenue, Fifth Floor
Portland, OR 97204
Telephone: +1.503.243.2081
Facsimile: +1.503.243.1738
kwilde@oradvocacy.org