IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

AMERICAN COUNCIL OF THE BLIND, a District of Columbia non-profit corporation, TAMMY RENEE COOPER, SCARLETT MILES, MARVELENA QUESADA, ARLENE DOHERTY, ALICE MARJORIE DONOVAN, BILLIE JEAN KEITH, GEORGE P. SMITH, and DOROTHY JACKSON on behalf of themselves and all others similarly situated,

    Plaintiffs,

  v.

MICHAEL ASTRUE, Commissioner of the Social Security Administration, in his official capacity, and SOCIAL SECURITY ADMINISTRATION,

    Defendants.

No. C 05-04696 WHA

**CLASS CERTIFICATION ORDER**

**INTRODUCTION**

In this disability-rights action, plaintiffs move for class certification. For the reasons stated below, plaintiffs' motion is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

Plaintiffs are ten visually impaired individuals and the American Council for the Blind, a national membership organization of visually impaired persons. Each individual plaintiff receives some kind of Social Security benefit, either through the Old-Age, Survivors, and Disability Insurance ("OASDI") program or the Supplemental Security Income ("SSI") program. Two of the named plaintiffs are representative payees. One receives payments for a

minor child who receives auxiliary benefits under the OASDI program. The other representative payee receives payments from the SSI program for a child with a developmental disability.

Plaintiffs seek to represent a class of similarly situated persons who receive or are applying for benefits through: (1) the OASDI program on the basis of earnings history; (2) the SSI program on the basis on the basis of financial need and either age, blindness, or other disability; (3) the Special Veterans Benefits ("SVB") program on the basis of financial need, age, World War II veteran status, and residence outside the United States; or (4) the Low Income Subsidy program under the Medicare Part D Prescription Drug Benefit plan.

This action was brought to compel the Social Security Administration to provide alternative formats of communication that would enable the putative class to have equal access to participate in SSA programs. Plaintiffs assert claims under Section 504 of the Rehabilitation Act and the due process clause. According to the complaint, defendants "have and continue to discriminate unlawfully against the named plaintiffs and the class members by failing to communicate with plaintiffs and the class members in an accessible format" in violation of Section 504 (SAC ¶ 121). The complaint further alleges that defendants' failure to communicate in an accessible format denies plaintiffs "adequate notice and an opportunity to be heard" regarding their Social Security benefits (a protected property interest) in violation of the due process clause. The alternative formats of communications suggested by plaintiffs include Braille, a large print, electronic mail, computer disk, and audiotape recording (*id*. at ¶ 3). Plaintiffs request declaratory relief and a permanent injunction regarding the agency's duties to provide information in accessible formats.

Plaintiffs now move for class certification. They seek to certify the following nationwide class:

> Individuals with visual impairments that substantially limit the major life activity of seeing who require that materials be in an accessible format in order to participate in programs and activities implemented by the SSA as applicants, beneficiaries, recipients, and representative payees.

The class purportedly consists of approximately three million persons.

2

**ANALYSIS**

**1.  CLASS DEFINITION.**

As an initial matter, defendants contend that plaintiffs' proposed class definition is uncertain and overbroad and that plaintiffs have no standing to sue on behalf of many of the putative class members included within the definition.  "A class definition should be precise, objective, and presently ascertainable." *O'Connor v. Boeing North American, Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).[1]  Defendants contend the class is insufficiently defined because it does not indicate which "programs and activities" it proposes to encompass.  This order agrees.  The Social Security Act provides for a wide variety of programs besides those at issue here.  42 U.S.C. 301–1397jj.  Plaintiffs' language of "programs and activities" only invites confusion and ambiguity.  Plaintiffs have also given no real justification why such language is necessary.  Accordingly, the class definition should be narrowed to only those programs which plaintiffs seek to compel action.

Defendants next challenge plaintiffs' proposed inclusion of the LIS and SVB programs on two grounds:  (i) plaintiffs lack standing to compel action with respect to the LIS and SVB programs and (ii) the representative plaintiffs' claims are not typical of those of the participants in the LIS and SVB programs.  Significantly, no representative plaintiff participates in either program.  Plaintiffs respond that "the named representatives have the same interest as class members who receive the LIS or SVB in receiving materials in an accessible format, and are threatened with similar harm — the loss of benefits and personal privacy" (Reply Br. 3–4).  Even if the representative plaintiffs share some interest with beneficiaries of the LIS and SVB programs, the Court is reluctant to extend the representative plaintiffs' responsibility to programs for which they have no direct connection.  Therefore, the Court finds that the named plaintiffs' claims are not sufficiently typical.  The LIS and SVB programs will thus be excluded from the class.

---

[1] Unless indicated otherwise, internal citations are omitted from all quoted authorities.

3

### 2. LEGAL STANDARD FOR CLASS CERTIFICATION.

In determining whether class certification is appropriate, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather, whether the requirements of Rule 23 are met." *Eisen v Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974). Although a district judge may not investigate the likelihood of prevailing on the merits, he or she is at liberty to consider evidence relating to the merits if such evidence also goes to the requirements of Rule 23. The party seeking class certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met. *See Hanon v. Data Products Corp.*, 976 F.2d 497, 508–09 (9th Cir. 1992).

For a named plaintiff to obtain class certification, the district court must find: (1) numerosity of the class; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class. In addition, in the instant case, plaintiffs seek to certify both classes under Rule 23(b)(2). Certification under Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . ."

Defendants here only challenge the commonality requirement and as a result request that a subclass be broken out from plaintiffs' proposed class. This order will thus address the commonality requirement first.

#### A. Commonality.

A class has sufficient commonality under Rule 23(a)(2) if "there are questions of law or fact which are common to the class." Rule 23(a)(2) does not require each member in a class to have identical factual and legal issues surrounding their claim. "The existence of shared legal issues with divergent factual predicates is sufficient" to meet the requirements of Rule 23(a)(2)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Defendants contend that commonality is defeated on twp separate grounds: (1) plaintiffs' five proposed accommodations would require an individualized inquiry for each putative class

4

1    member; (2) the circumstances surrounding benefits paid to representative payees are

2    fundamentally different than the remaining putative class members;

### *(1)    The Five Proposed Accommodations.*

Defendants first argue that because plaintiffs have proposed five specific types of accommodations that the SSA could implement — *i.e.*, Braille, large print, electronic mail, computer disks, and audio recordings — that an individualized inquiry into the specific accommodation needed for each particular putative class member would have to be made.[2] As defendants put it (Opp. 9):

> Plaintiffs are not simply asking the Court to determine that SSA's policies constitute a denial of meaningful access, and then allowing SSA to determine an appropriate remedy. Instead, plaintiffs are specifically asking the Court to require SSA to provide benefits information in at least five specific formats: Braille, large print, electronic mail, computer disks, and audio recordings. Rather than allow SSA the first opportunity to determine what accommodations it will offer, plaintiffs are in essence asking the Court to engage in an individualized analysis of the circumstances of each member of the class and to resolve exactly what SSA is required to do to accommodate each individual.

In reply, plaintiffs state (Reply Br. 5–6):

> Plaintiffs are not asking the Court to conduct individualized inquiries, but are seeking SSA's compliance with its own Section 504 procedures. Plaintiffs' identification of various types of alternative formats (such as Braille, audio recordings, electronic mail, large print format, and computer discs) illustrates that "effective communication" to the class may require the use of common auxiliary aids. However, the issue in this case is not whether each type of auxiliary aid is provided but rather, whether SSA is failing to meet its obligations under Section 504 to provide "effective communications" to all blind and visually impaired program participants.

This order agrees with plaintiffs. What is at issue in this action, and what plaintiffs must prove, is whether the SSA has failed to comply with Section 504 of the Rehabilitation Act and the due process clause. It makes little difference that plaintiffs here have suggested possible ways in which they believe the SSA could fulfill its purportedly neglected duties. At the appropriate time (if defendants' are found to have neglected their duties under the Rehabilitation Act or the

---

[2] Significantly, the five accommodations proposed by plaintiffs are taken verbatim from the Department of Health and Human Service's regulations. *See* 45 C.F.R. 85.3.

5

1  due process clause), the issue of what type of accommodation should be made. This order does
2  not expect that this issue will require an individualized inquiry with respect to each putative class
3  member. For example, class members could be given notice and a choice of what type of
4  accommodation they would prefer.
5     The decisions cited by defendants only reinforce that commonality is satisfied.
In *Davis v. Astrue*, 2008 WL 1944134 (N.D. Cal. 2008), Judge Marilyn Patel of this district
considered a putative class of mentally disabled beneficiaries who alleged the SSA's policies
violated Section 504 of the Rehabilitation Act. There, the defendants made the same argument
as is made here:

> Defendant asserts that this action requires individualized
> determinations based on the specific disabilities of each potential
> class member. Defendant claims that the allegations in this action
> are different from those in which a uniform response could be
> derived because "meaningful access" is an inquiry that must look
> at each individual's level of or lack of access.

*Id*. at *10. The court rejected this argument, finding:

> Plaintiff, however, brought this action as a facial challenge to
> the SSA's policies and procedures surrounding determinations
> of "substantial gainful work activity" and benefits terminations
> for mentally disabled beneficiaries. Plaintiff asserts that SSA's
> policies and procedures in making these determinations result in
> violations of the Rehabilitation Act. Defendant's arguments
> that "meaningful access" under the Rehabilitation Act must be
> determined on a case-by-case basis are inapposite because
> plaintiff is not asserting that the individual application of the
> policies is in violation. . . . While defendant is correct that the
> individuals in the proposed class have unique medical
> conditions that would impact the type of individualized
> response required by Section 504, that response is outside the
> scope of what plaintiff seeks from this action. Plaintiff seeks a
> declaratory judgment and injunctive relief regarding defendant's
> policies that allegedly violate Section 504 and discriminate
> against mentally disabled beneficiaries.

*Id*. at 10–11. Plaintiffs here seek much the same. That is, a declaratory judgment and injunctive
relief regarding the SSA's disclosure policies for blind individuals.

Similarly, in *Xiufang Situ v. Leavitt*, 240 F.R.D. 551 (N.D. Cal. 2007) (Henderson, T.),
the court certified a nationwide class consisting of beneficiaries with dual eligibility under both
Medicare and Medicaid programs who alleged system-wide problems with their enrollment
under the Medicare Part D program. In so doing, the court held, "it is sufficient for plaintiffs to

6

allege that defendant has failed to take action — *i.e.*, failed to implement a practice or policy-that satisfies his obligations" to satisfy the commonality requirement. *Id*. at 560–61. The court later rejected the defendants' arguments that an individualized inquiry into each specific class member would have to be made:

> Plaintiffs do not seek such individualized relief. Instead, plaintiffs ask the Court to order defendant to comply with his statutory obligations regarding implementation of the Part D program for dual eligibles. If plaintiffs were to prevail on the merits, the Court would not need to engage in individualized inquiries regarding which class members have been denied benefits. Indeed, rather than seeking awards for damages or retroactive benefits plaintiffs' complaint seeks injunctive relief . . . .

*Id*. at 563. Defendants here have essentially mischaracterized plaintiffs' requested relief in an attempt to defeat commonality. But the fact remains that this action is a challenge to the SSA's policies regarding its disclosures to blind individuals. Such disclosure is common across the class.

### *(2)    The Representative Payees.*

A representative payee is an individual or organization that receives benefits for someone who cannot manage or direct the management of his or her money. Defendants claim that inclusion of representative payees in the class is inappropriate because: (i) they would be required to offer different evidence to satisfy a prima facie case under Section 504 and (ii) the defense of undue burden is stronger against representative payees than the rest of the putative class. With respect to the first issue, defendants emphasize that in order to properly state a Section 504 claim, a plaintiff must show that he or she meets the "eligibility requirements" of the program. Because the eligibility requirements for representative payees are different than those for direct beneficiaries, defendants maintain in a rather conclusory fashion that certification should be denied. Defendants have made no attempt, however, to show exactly how different the eligibility requirements are or why any such difference would practically matter here. Without such analysis and given the overwhelmingly common issue of adequacy of disclosure prevalent across the class, it is difficult to see why representative payees should be excluded from this action entirely. Any legitimate difference would only advise treating the representative payees as a separate class.

7

1    The next issue raised by defendants is undue burden. To succeed on their Section 504 claim, plaintiffs must show that the requested accommodations are reasonable. An "[a]ccommodation is not reasonable if it either imposes 'undue financial and administrative burdens [on the program] or requires 'a fundamental alteration in the nature of [the] program.'" *School Bd. of Nassau County, Fla. v. Arline*, 480 U.S. 273, 287 n.17 (1987)(*quoting Se. Cmty. Coll. v. Davis*, 442 U.S. 410, 410–12, (1979). Defendants maintain that while the direct beneficiary system does have the capacity to track a member's disability (*e.g.*, blindness), "the representative payee system currently lacks the capacity to track whether a representative payee is blind or visually impaired . . ." (Opp. 17). Again, this issue only advises treating the representative payees as their own separate class — *not* excluding them from this action entirely.

Accordingly, the representative payees will be treated as their own separate class.

### B.   Numerosity.

The numerosity requirement of Rule 23(a)(1) is satisfied when joinder of individual plaintiffs would be impracticable. While plaintiffs need not allege the exact number or identity of class members, mere speculation of the number of class members involved does not satisfy the requirement of Rule 23(a)(1). *See Ellis v. Costco Wholesale Corp.*, 240 F.R.D. 627, 637 (N.D. Cal. 2007). The proposed class here is allegedly in the millions (SAC ¶ 20). Defendants do not dispute that the numerosity requirement has been satisfied. Accordingly, this order finds that plaintiffs have met their burden required by Rule 23(a)(1).[3]

### C.   Typicality.

The typicality requirement of Rule 23(a)(3) is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." A plaintiff's claims are typical if they "are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

---

[3] Defendants contend in their briefing that if the representative payees are treated as a separate class that they do not satisfy the numerosity requirement. Not so. While plaintiffs have not proffered the exact number of representative payees that would be a part of the class, they have satisfied their burden to show the class is sufficiently numerous. According to plaintiffs' statistical analysis, the number of representative payees in the putative class is in the hundreds. Defense counsel admitted as much at the hearing on this motion.

8

1    Here, each of the ten named plaintiffs' claims are typical of the class.  All, except the
2 American Council for the Blind, are visually impaired.  Eight are direct beneficiaries of benefits
3 and two are representative payees.  Like the other putative class members, each allege that
4 defendants discriminate unlawfully by their failure to provide communications regarding
5 benefits in accessible formats.  Typicality has been satisfied.

### D.     Adequacy.

The last hurdle of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class."  Determining whether the representative parties adequately represent a class involves two inquiries:  (1) does the named plaintiff and counsel have any conflicts of interest with other class members and (2) will the named plaintiff and his or her counsel act vigorously on behalf of the class?  *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).  The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.  "[A] class representative must be part of the class and possess the same interest and suffer the same injury' as the class members."  *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977).

Plaintiffs have satisfied their burden.  Significantly, this action is brought to compel action on behalf of the SSA — no monetary damages are sought.  The potential for any conflict or collusion is therefore minimal.  Plaintiffs have also shown that their counsel are qualified and will act vigorously and in the best interests of the class.  Defendants have not contested adequacy.

### E.     Injunctive and Declaratory Relief.

In addition to the four requirements of Rule 23(a), plaintiffs must satisfy one of the requirements of Rule 23(b).  Here, plaintiffs rely on Rule 23(b)(2).  That rule requires that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . ."  "It is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole" to satisfy Rule 23(b)(2).  "Even if

9

some class members have not been injured by the challenged practice, a class may nevertheless be appropriate." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998). Civil rights cases against parties charged with class-based discrimination are "prime examples" of actions certified under Rule 23(b)(2). *Amchen Prods. v. Windsor*, 521 U.S. 591, 614 (1997).

Certification under Rule 23(b)(2) is appropriate here. Defendants' alleged discriminatory practices apply to the class as a whole and plaintiffs seek injunctive relief accordingly.

Accordingly, this order hereby certifies the following two classes:

> Individuals with visual impairments that substantially limit the major life activity of seeing who require that materials be in an accessible format in order to participate in the Social Security Administration's Old-Age, Survivors, and Disability Insurance program or the Supplemental Social Security Income program as applicants, beneficiaries, or recipients, but not as representative payees with the class representatives being Tammy Renee Cooper, Scarlett Miles, Marvelena Quesada, Arlene Doherty, Alice Marjorie Donovan, Billie Jean Keith, George P. Smith, Dorothy Jackson, Mary Ann Alexander, and Laura M. Russell.

\*          \*          \*

> Individuals with visual impairments that substantially limit the major life activity of seeing who require that materials be in an accessible format in order to participate in the Social Security Administration's Old-Age, Survivors, and Disability Insurance program or the Supplemental Social Security Income program as representative payees with the class representatives being Mary Ann Alexander and Laura Russell.

**3. NOTICE.**

When a class is certified under Rule 23(b)(2), there is no requirement that absent class members receive notice or be given an opportunity to opt out of the lawsuit. *Equal Employment Opportunity Comm'n v. General Tel. Co.*, 599 F.2d 322, 334 (9th Cir. 1979). The district court instead has the discretion to decide whether or not to order notice. *Molski v. Gleich*, 318 F.3d 937, 952 (9th Cir. 2003). Plaintiffs contend that notice need not be sent to class members. This order disagrees. Within **TWENTY CALENDER DAYS**, the parties are requested to jointly submit a form notice that advises class members, among other things, of their rights to: intervene in this action, submit comments, and contact class counsel, as well as a plan for dissemination. The reason for requesting notice is that the issues of potential relief involved are

important to class members and the Court desires to have the maximum input possible from the class.

## CONCLUSION

For the reasons stated above, plaintiffs' motion for class certification is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED.**

Dated: September 11, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE